# FERGUSON *v.* ARTHUR.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued March 24, 1886.—Decided April 5, 1886.

Under § 2504, Schedule M. of the Revised Statutes (p. 480, 2d ed.), "Henry's
Calcined Magnesia," imported in glass bottles, is liable to a duty of 50 per
cent. *ad valorem*, as being a medicinal preparation, recommended to the
public as a proprietary medicine, and not to a duty of 12 cents per pound,
as calcined magnesia, under the same section and schedule (p. 477).

The case is stated in the opinion of the court.

*Mr. Edwin B. Smith* for plaintiff in error, cited *Arthur* v.
*Davies,* 96 U. S. 135; *Arthur* v. *Stephani,* 96 U. S. 126; *Reiche*
v. *Smythe,* 13 Wall. 162; *Movius* v. *Arthur,* 95 U. S. 144; *Ar-
thur* v. *Rheims,* 96 U. S. 143; *Arthur* v. *Lahey,* 96 U. S. 112;
*Arthur* v. *Zimmerman,* 96 U. S. 124; *Barber* v. *Schell,* 107 U.
S. 617; *Marvell* v. *Merritt,* 116 U. S. 11; *Fisk* v. *Arthur,* 103
U. S. 431; *Solomon* v. *Arthur,* 102 U. S. 208; *Victor* v. *Arthur,*
104 U. S. 498; *Newman* v. *Arthur,* 109 U. S. 132; *Drew* v.
*Grinnell,* 115 U. S. 477; *Smith* v. *Field,* 105 U. S. 52; *Astor*
v. *Merritt,* 111 U. S. 202; *Railroad Co.* v. *Fraloff,* 100 U. S. 24;
*Arthur* v. *Morgan,* 112 U. S. 495; *Schmidt* v. *Badger,* 107 U. S.
85; *Merritt* v. *Stephani,* 108 U. S. 106; *Merritt* v. *Park,* 108
U. S. 109; *Trade Mark Cases,* 100 U. S. 82; *Manufacturing Co.*
v. *Trainer,* 101 U. S. 51.

*Mr. Assistant Attorney-General Maury* for defendant in
error.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action brought by Walton Ferguson, in the Su-
preme Court of the State of New York, and removed into the
Circuit Court of the United States for the Southern District of
New York, against the collector of the Port of New York, to

recover moneys paid under protest, in January, 1876, as duties on an importation of "Henry's Calcined Magnesia," made by said Ferguson, doing business as J. & S. Ferguson. The collector exacted on the merchandise a duty of 50 per cent. *ad valorem*, under the following provision of the Revised Statutes, § 2504, Schedule M. p. 480. 2d ed.:

"Proprietary medicines: Pills, powders, tinctures, troches or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters, essences, spirits, oils, or other medicinal preparations or compositions, recommended to the public as proprietary medicines, or prepared according to some private formula or secret art as remedies or specifics for any disease or diseases or affections whatever affecting the human or animal body: fifty per centum ad valorem."

The plaintiff contended that the article was dutiable at 12 cents per pound, under this provision of the same section and Schedule (p. 477): "Magnesia, carbonate: six cents per pound; calcined, twelve cents per pound."

At the trial there was a verdict for the defendant, and he had judgment, and the plaintiff has brought a writ of error.

The bill of exceptions contains the following statements:

"The merchandise in question was Henry's calcined magnesia, prepared by Thomas and William Henry, manufacturing chemists, of Manchester, England, and put up in ounce bottles; in the glass of each bottle was blown the words 'Henry's Calcined Magnesia, Manchester;' and over one end of each bottle was pasted a stamp, of which the following is a copy:

| Stamp. | Value above 1*s.* not exceeding 2-6. | Three Duty Pence 2. | Thos. & Will'm Henry. Manchester. | Office. |

"It also appeared in evidence that, accompanying each bottle thereof, was a wrapper; that upon said wrapper was a circular; that of the said labels the following are copies:

'Henry's Calcined Magnesia.
'Price 2s 9d. Stamp included.

### ' Caution.

'The purchasers of this article are requested to observe that the words Thos. and William Henry, Manchester, are engraved on the government stamp pasted over the cork of each bottle. This is the only effectual security against the counterfeited imitations which are sold in bottles similarly moulded, under their names. Trade-mark, ' Henry's Calcined Magnesia.'

### ' Caution.

' Messrs. Thos. & Wm. Henry, of Manchester, have received frequent complaints that their calcined magnesia is counterfeited in the United States, and having been furnished with specimens of spurious and very inferior imitations there vended, in bottles similarly moulded, and with forged stamps and bills of direction, beg leave to caution the consumers of their magnesia in America to purchase it only of persons whose character is such as to preclude their selling a spurious article knowing it to be such.

' Druggists and storekeepers are informed that Messrs. J. and S. Ferguson, (late Ogden, Ferguson & Co.,) merchants, of New York, are the sole wholesale agents authorized by Messrs. Henry in the United States, and that the article may be constantly had of them genuine and on the best terms. Trade-mark, Henry's Calcined Magnesia.'

"That upon the first of the aforesaid labels was pasted a stamp; that the following is a copy thereof:

" That the following is a copy of the aforesaid circular:

'Trade Mark:
'Henry's Calcined Magnesia.
'Genuine Calcined Magnesia.
'Prepared by
'Thomas and William Henry,
'Manufacturing
'Chemists,
'East St. and St. Peters, Manchester,

'And sold wholesale by them, and in London by Bayley & Company, Cockspur St.; Barclay & Sons, Farmington St.; Butler & Crispe, 4 Cheapside; Edwards, 157 Queen Victoria street; F. Newberry & Sons, 37 Newgate street; J. Sanger & Sons, 150 & 252 Oxford street; Sutton (late Diccy & Co.), 10 Bow Church Yard, and Savory & Moore, 143 New Bond street, in bottles at 2s. 9d., or with ground stoppers at 4s. 6d., stamps included, (the names of the preparers being engraved upon each government stamp, pasted over the cork or stopper of each bottle, which in British dominions, where the forgery of the stamp is highly penal, is the best security against counterfeits,) and retail by at least one agent in every country town.'"

The circular went on to set forth the beneficial use of calcined magnesia in certain specified diseases, and in complaints of children; and the dose required for children and for adults; and wherein calcined magnesia is superior to common or uncalcined magnesia alba; and then proceeded: "In consequence of improvements which they have made in the manufacture of calcined magnesia, Messrs. Henry are enabled to offer to the public their preparation of this medicine, which has already been honored with the approbation of some of the first chemists and physicians of the age, with increased confidence in its superior quality. The calcined magnesia prepared by them will be found to be perfectly deprived of carbonic acid, free from taste, smell, or other disagreeable property, and without roughness or grittiness to the touch or the palate."

The bill of exceptions further says: "Plaintiff's testimony proved that all calcined magnesia is a well-known medicinal

preparation of magnesia, made from sulphate of magnesia, bicarbonate of soda, and calcined by heat. A formula for the preparation is contained in the dispensatories, and first-class chemists frequently prepare the article for their own use. The article comes in bulk and is sold at $2.50 per pound. Henry's calcined magnesia is universally known by that name, and has a character of its own, distinct from ordinary calcined magnesia, though it is used for the same purposes. It has been prepared by the same family, a firm of manufacturing chemists in Manchester, England, for the last one hundred years, and has a peculiar value in the market. It sells in this country, at wholesale, by the dozen, ounce bottles, for $8.50, and for twenty-seven shillings in England, whereas Husband's preparation, the American preparation of the highest repute, sells at $3.00 or $3.50 per dozen. Henry's preparation has a peculiar reputation on account of the nicety with which it is prepared. Whether it is prepared according to the formula given in the dispensatory no witness knew. There was no dispute, upon the above facts, in regard to the history of Henry's magnesia and its peculiar value and reputation, and the form and style and representations under which it has been and is presented to the public."

At the close of the evidence on both sides, the defendant moved the court to direct a verdict for him upon the ground that the plaintiff had failed to show that his merchandise was not "a proprietary medicine or medicinal preparation," within the meaning of the above provision, under which the duty was exacted. Before a ruling was made on that motion, the plaintiff requested the court to submit "the question of fact" to the jury, on the ground that there was a substantial question of fact which was in dispute. The court denied the plaintiff's request, and he excepted. The court then directed the jury to find a verdict for the defendant, on the ground that there was no material question of fact in dispute, and to such ruling the plaintiff excepted. The jury thereupon rendered a verdict for the defendant.

That the article in question is a medicinal preparation, there can be no doubt. The circular sets forth its virtues as a remedy in disease, and calls it a "medicine."

Is it recommended to the public as a proprietary medicine?
"Proprietary" is defined thus—in the Imperial Dictionary:
"belonging to ownership; as, proprietary rights"—in Webster: "belonging, or pertaining, to a proprietor;" "proprietor"
being defined, "one who has the legal right or exclusive title
to anything, whether in possession or not; an owner"—in Worcester: "relating to a certain owner or proprietor."

It is quite plain, we think, that Thomas and William Henry
recommended their calcined magnesia to the public as a
medicine in which they had a proprietary right, as owning all
that there was of good will and business reputation appurtenant
to the article resulting from its name and from what they stated
about its manufacture. They prepared it and put it up in glass
bottles, in each of which was blown the words "Henry's Calcined Magnesia, Manchester." Over one end of each bottle was
pasted an English revenue stamp, with their name on it. They
announced a property in the trade-mark, "Henry's Calcined
Magnesia." They called it "their calcined magnesia." They
announced J. & S. Ferguson as their sole wholesale agents in
the United States. They recommended the article as of
superior quality, because of improvements which they had
made in its manufacture, and stated, as a result of those improvements, that the article had no carbonic acid, no taste,
smell, or other disagreeable property, and no roughness or
grittiness to the touch or palate. To complete this proprietary
character, they put on each bottle a four cent United States
internal revenue proprietary stamp. Although it appeared at
the trial, that all calcined magnesia "is a well-known medicinal
preparation of magnesia, made from sulphate of magnesia, bicarbonate of soda, and calcined by heat," and that a formula
for the preparation was contained in the dispensatories, it did not
appear that Henry's preparation was made according to that
formula, while it did appear that it was universally known
by the name of "Henry's Calcined Magnesia," and had a character of its own, distinct from ordinary calcined magnesia,
though used for the same purposes, and that it had been prepared by the same family at Manchester for 100 years, and had
a peculiar reputation on account of the nicety with which it

was prepared, and a peculiar value in the market, shown by the price it commanded.

We cannot doubt that this was an article recommended to the public as a proprietary medicine, within the statute. It may fall within that clause, without being prepared according to some private formula or secret art, as a remedy for disease. The statute is in the alternative.

A reference to the internal revenue law, Schedule A to § 3419 Rev. Stat., p. 678, 2d. ed., shows the sense in which Congress used the word "proprietary." It imposed internal revenue taxes on medicinal preparations, where the person making or preparing them (1) had or claimed a private formula or secret or art; (2) had or claimed an exclusive right or title to the making or preparing them; (3) made or sold them under a patent; (4) recommended them to the public as proprietary medicines, or as remedies for disease. Thus a medicinal preparation might be proprietary, without being made by a private formula, or under an exclusive right claimed to the making or preparing it, or under a patent. These internal revenue provisions had their inception in the act of July 1, 1862, ch. 119, 12 Stat. 484, while both of the customs provisions above cited are first found in the act of July 14, 1862, ch. 163, 12 Stat. 548, 549. The word "proprietary," as applied to a medicinal preparation, in the revenue laws, had its origin then.

The plaintiff contends that, because a duty of so much a pound is laid on calcined magnesia by that specific name, this Henry's calcined magnesia, imported in bottles and sold by the bottle by that name, cannot be dutiable under the general designation of a proprietary medicine. But this article is not, and does not purport to be, the calcined magnesia dutiable at 12 cents a pound. By the mode of manufacture used, the carbonic acid is eliminated, the taste and smell are destroyed, other disagreeable qualities are removed, and all grittiness is got rid of. It "has a character of its own, distinct from ordinary calcined magnesia," as the bill of exceptions states, which must arise from the special mode of manufacture. The "ordinary calcined magnesia" is that sold in bulk and by the pound, and dutiable at 12 cents a pound. It was undoubtedly

to reach just such medicinal preparations as this—the monopoly of a particular person, commanding a price due to a special mode of manufacture, sold in bottles, having a name attached identifying the manufacturer as the proprietor of all that imparted the special merit and produced the special price—that the special revenue tax was laid.

The duty by the pound on calcined magnesia, and the *ad valorem* duty on proprietary medicines, starting together, as they did, in the act of July 14, 1862, and continued in the same language in the Revised Statutes, and reproduced in the act of March 3, 1883, ch. 121 (22 Stat. 493, 494), with the duty on calcined magnesia put at 10 cents per pound, and the word "proprietary" extended to all proprietary articles, and not confined to proprietary medicines, the principle of the cases cited for the plaintiff does not apply.

In *Homer* v. *The Collector*, 1 Wall. 486, "almonds" had been dutiable *eo nomine* almost immemorially, and an *ad valorem* duty was imposed on them, as "almonds," in the act of 1846, and it was held that, under the act of 1857, they were not subject to a less duty, as "fruits, green, ripe and dried."

In *Movius* v. *Arthur*, 95 U. S. 144, "patent leather" was dutiable by that name, in the acts of 1861 and 1862. The act of 1872 imposed a less duty on "skins dressed and finished, of all kinds." It was held that the old duty on patent leather continued, because, though it was a finished skin, something was done to it after it could be called a finished skin to make patent leather of it. In the case at bar, Henry's article is not the ordinary calcined magnesia, dutiable by the pound, but something is done to that ordinary calcined magnesia by the Henrys which, in connection with the manner in which it is put up and sent forth, makes it a proprietary medicine, although the base of it is magnesia, calcined.

In *Arthur* v. *Stephani*, 96 U. S. 125, "confectionery" was, by the act of 1864, dutiable at 50 cents a pound, and by the act of 1872 a duty of 5 cents a pound was laid on "chocolate." It was held that an article which was simply chocolate was dutiable as "chocolate" and not as "confectionery."

A like case is that of *Arthur* v. *Rheims*, 96 U. S. 143, where

" artificial flowers," an article made of cotton, being dutiable by that name in the act of 1864, it was held that they were not dutiable at a less rate, by the imposition of a less duty on manufactures of cotton, in the act of 1872.

There was no question of fact for the jury, and it was proper for the court to direct a verdict for the defendant. *Improvement Co.* v. *Munson*, 14 Wall. 442; *Pleasants* v. *Fant*, 22 Wall. 116; *Herbert* v. *Butler*, 97 U. S. 319; *Bowditch* v. *Boston*, 101 U. S. 16; *Griggs* v. *Houston*, 104 U. S. 553; *Randall* v. *Baltimore & Ohio Railroad Co.*, 109 U. S. 478; *Anderson County Commissioners* v. *Beal*, 113 U. S. 227; *Baylis* v. *Travellers' Ins. Co.*, 113 U. S. 316; *Schofield* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 114 U. S. 615.

*Judgment affirmed.*