## BERBECKER *v.* ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 245.  Argued February 1, 1894.—Decided March 12, 1894.

Under the act of March 3, 1883, c. 121, 22 Stat. 488, brass upholstering nails were subject to the duty of 45 per cent *ad valorem* imposed upon manufactures, articles, or wares, not specially enumerated or provided for in the act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal.

THIS was an action to recover duties paid under protest upon importations of nails, described in the bill of particulars as "upholstering nails," between September 21, 1883, and January 22, 1884.

Schedule C of the act of March 3, 1883, c. 121, contained the following provisions, 22 Stat. 488, 498, 501 :

"Horse-shoe nails, hob nails, and wire nails, and all other wrought iron or steel nails, not specially enumerated or provided for in this act, four cents per pound."

"Britannia ware, and plated and gilt articles and wares of all kinds, thirty-five per centum ad valorem."

"Manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem."

These paragraphs are numbered in the tariff index as 168, 210, and 216.

The collector applied the last paragraph to these nails and

the plaintiffs protested that one or the other of the preceding clauses gave the applicable rate. At the trial a verdict was found, under the direction of the court, for a portion of the duties collected, and plaintiffs consequently recovered a judgment, but a judgment for less than the amount they claimed. The only witness was one of the plaintiffs, and the bill of exceptions, containing his testimony and the subsequent rulings, is as follows:

"I am interested in manufacturing. I have been in manufactories abroad, and have seen these goods made, and know how it is done. The heads of the nails are tumbled in barrels of water and chemicals to give them a nice gold color. Before they go into the barrels they are the natural color of brass. These samples are known in trade and commerce as gilt nails and are bought and sold as such.

"Being cross-examined by counsel for defendant:

"I cannot describe the exact color of brass except I went into a brass mill and showed you a piece of brass. (Referring to a nail in a board:) If I saw it at a distance I should probably say it was brass, but still it does not look like the nails before they go into the barrel. Before they go into the barrel there is no lustre on them, or very little. I do not see anything here that looks like the sheet brass of which the nails are made. With regard to the contents of the barrel referred to by me in my direct examination as 'water and chemicals,' I do not care to state what the chemicals are, because it is a trade secret, but I am willing to state it to the judge alone, so that nobody else hears it. It is a liquid substance of the color of water. It looks like water and nothing else. The process through which these exhibits are put is called by some polishing; not polishing by means of rubbing, but it is done by friction, by the shaking of them up, by the rolling of the nails in the barrel. The length of time they are rolled depends upon what color you want to get on them; sometimes an hour, sometimes two hours, and sometimes it takes longer. I roll them until I get the color I want. Increased rolling tends to darken the color sometimes and sometimes to lighten it.

"These nails are bought and sold in this country under the name of gilt nails. That is the proper name for these. They may be sometimes sold under another name, but meaning a gilt nail of first and second quality. We do not sell them as upholstery nails. I cannot tell what other parties do. I cannot swear to that. I know only how they are labelled, and if by accident they should be billed as upholstery nails, I should consider it a mistake. I cannot swear that they are not bought and sold in trade and commerce of this country as upholstery nails, because I do not know what other parties do. I can only speak for myself and at the same time as to what is the general usage in the trade. The general usage has been, I know, as long as I have been in the business, whenever a person asked me what was the price of nails, of gilt nails, or they might have asked for upholstery nails, I knew that they meant gilt nails. They are bought and sold in this country under the name of gilt nails. They may possibly have been ordered from a large dealer by a dealer in this country under the name of 'upholstery nails.' They are sometimes bought and sold in trade and commerce of this country as ' French nails,' ' chair nails,' and as ' furniture nails.'

"Defendant's counsel then moved to strike out the testimony as to the fact that they were called 'gilt nails.' The court granted the motion, and plaintiffs' counsel duly excepted, and the exception was duly allowed.

"Plaintiffs thereupon rested, and counsel for the defendant moved the court for the direction of a verdict for the defendant upon so much as was sought to be recovered upon the nails which did not appear to be actually gilt or not to have gold upon them, which motion the court then and there granted and directed the jury to find a verdict for the defendant; to which ruling and direction the counsel for the plaintiffs then and there duly excepted, and the exception was allowed, and the jury thereupon found a verdict for the defendant."

Judgment having been entered on the verdict, a writ of error was duly taken out.

*Mr. Edwin B. Smith* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Upon this record, it is apparent that these nails did not fall within the first of the three paragraphs, as they are referred to in the evidence as made of sheet brass. Counsel produced in argument some nails with wrought iron shanks and brass heads, which he claimed were the same as those in question, but they were not before us as exhibits, and, moreover, appeared to be in the nature of brass ornamentation.

Nor did the nails come within the second of the paragraphs, "Britannia ware, and plated and gilt articles and wares of all kinds," unless the principle of commercial designation could be properly applied and such designation was made out, for we concur in the view that gilt articles and wares taken in connection with Britannia and plated ware mean articles actually gilded by overlaying, and not merely made to look gilt by rolling them in a secret chemical solution. We are not prepared to hold that, under such circumstances, this paragraph would be applicable, even if nails thus manipulated were commercially designated as "gilt nails;" but, if applicable, we are still of opinion that the judgment must be affirmed.

It has just been held that the usage from which it may be inferred that Congress intended to use particular words in a particular sense in a tariff act, must be definite, uniform, and general, and that such designation is to be determined as of the date of the act. *Maddock* v. *Magone, ante*, 368.

Tested by this rule, the evidence was entirely insufficient to show such a usage in respect of denominating this class of nails, "gilt nails," contemporaneous with the tariff act of March 3, 1883, or otherwise.

True, plaintiff testified that the articles "are known in trade and commerce as gilt nails and are bought and sold as such," but his testimony on cross-examination practically

limited his personal knowledge of usage in the trade to his own practice; he could not say that they were not bought and sold in trade and commerce as upholstery nails; and he admitted that they were sometimes so bought and sold as French, chair, and furniture nails. The evidence of a definite, general, and uniform usage was so slight, if any at all, that a verdict based upon it would be set aside, and the Circuit Court committed no error in striking it out and in directing a verdict for defendant as to these particular nails.

Something was said about the lack of precision in the motion "to strike out the testimony as to the fact that they were called 'gilt nails,'" and the effect of not making it until the conclusion of the testimony of the witness; but as no further evidence was offered, the motion practically amounted to a demurrer to evidence, and if it was not sufficiently comprehensive, that was cured by the direction of the verdict. The Circuit Court was right, and the judgment is

*Affirmed.*

MR. JUSTICE GRAY was not present at the argument, and took no part in the decision of this case.