ment, entered upon an order made May 13, 1895, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and ordered a new trial.

*Albert G. McDonald* and *R. B. Greenwood, Jr.,* for appellant.

*Esek Cowen* for respondent.

Judgment affirmed in Simms case.
Judgment reversed in Charde case on the opinions of General Term in the Simms case, with costs.
All concur.

---

CHARLES A. JOSLYN, as Administrator, etc., Appellant, *v.* IDA G. RAYMOND et al., as Administrators, etc., Respondents.

Mem. of decision below, 40 Hun, 633.
(Argued October 8, 1895; decided October 22, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 17, 1886, which affirmed a judgment in favor of defendant entered upon the report of a referee.

*John B. Abbott* for appellant.

*S. D. Bentley* for respondent.

Judgment affirmed, with costs; no opinion.
All concur except HAIGHT, J., not sitting.

---

ARTHUR W. SHULTES, Appellant, *v.* NICHOLAS A. SICKLES, Respondent.

Reported below, 70 Hun, 479.
(Argued October 9, 1895; decided October 22, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

made July 8, 1893, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court and dismissed plaintiff's complaint upon the merits.

The following is the opinion:

" This was an action of ejectment, in which the plaintiff claimed to recover the possession from the defendant of a parcel of land containing about one hundred and twenty-three acres, situated in the county of Albany. At the close of the trial both parties requested the trial judge to direct a verdict, each in his own favor. A verdict was directed in favor of the defendant. The plaintiff having excepted to this ruling, then requested the court to submit the case to the jury upon all the questions of fact. This request was denied and the plaintiff excepted.

" While it is true that in a case where both parties request the court to direct a verdict, the court is thereby clothed with the functions of the jury, with respect to any questions of fact in the case, and in the absence of a request to go to the jury by the party against whom the verdict is directed the decision stands in the place of a verdict, yet in this case the plaintiff, upon a denial of his motion, made the request to have the case submitted to the jury. He was not precluded from making this motion by his previous request to have a verdict directed in his favor, and if there was any evidence competent to submit to the jury upon the disputed questions of fact the denial of his motion would probably be error. (*Howell* v. *Wright*, 122 N. Y. 667; *Dillon* v. *Cockcroft*, 90 N. Y. 649; *Kirtz* v. *Peck*, 113 N. Y. 222; *Thompson* v. *Simpson*, 128 N. Y. 270.)

" The question, therefore, is whether the plaintiff had given any evidence to carry the case to the jury.

" The common source of title is a manorial lease in perpetuity by Stephen Van Rensselaer to Johannes Shafer of the lands in question, with others, reserving certain yearly rents, with the right of re-entry in case of non-payment. The title and interest of the grantee under this lease became, through various mesne conveyances, vested in John Sickles, the defendant's father, in the year 1845, subject, however, to the obliga-

89

tion to pay the rent reserved in the lease, and to the right of re-entry in case of non-payment.

" On April 28th, 1864, Van Rensselaer recovered a judgment against Sickles in ejectment for the recovery of the premises, based upon the covenants in the lease and the non-payment of the rent reserved, but no attempt was made, so far as appears, to enforce this judgment for many years afterwards. In the meantime, and in the year 1875, one Joseph I. Shultes foreclosed a mortgage which he held upon the interest of Sickles in the land, and became the purchaser thereof upon a sale under the decree entered in the foreclosure action ; but his title was expressly subject to the superior rights of Van Rensselaer under the manorial lease. It does not appear that Shultes ever went into actual possession, but it does appear that the next year he contracted to sell his interest to the defendant, who is the son of John Sickles, and who succeeded his father in the possession of the land. Subsequently Joseph I. Shultes died, and whatever claim the plaintiff, who is his son, may have is derived through his father's will.

" In the year 1883 Walter S. Church, having become the assignee of the judgment in ejectment at the suit of Van Rensselaer, proceeded to execute the same. Leave was granted by the court permitting the owner of the judgment to enforce, the same by execution or writ of possession, and it was executed against John Sickles and the defendant, his son, who were then in possession. The sheriff made return upon the process that on July 27th, 1883, he delivered the possession of the premises to Church, the assignee of the judgment. On the same day the defendant and his father executed an instrument in writing to Church, whereby they admitted that possession of the farm was that day surrendered by them and delivered to Church, and they acknowledged that they held the premises as tenants at will under Church. On the 12th day of January, 1885, Church conveyed the lands to the defendant by deed duly executed and delivered, and under this title the defendant was in possession at the time of the commencement of this action.

" Some questions were discussed by the learned counsel for the plaintiff which relate to the procedure by which the

judgment was revived and finally executed, but, we think, they have no bearing upon this appeal. The judgment in favor of Van Rensselaer adjudged his title to the land and his right to the possession. It was not impaired by the lapse of time. The court in which it had been rendered had the power and jurisdiction to enforce it, and no error or irregularity in the order permitting the execution to issue, even if such existed, can be reviewed upon this appeal. If there was any error or irregularity in the proceedings which resulted in the delivery by the sheriff of the possession to Church, the plaintiff's remedy was by appeal or motion, and the only question here is the power of the court to set the sheriff in motion. We have no doubt in regard to the power and very little with respect to the regularity of the proceedings.

"But it is urged by the learned counsel for the plaintiff that the deed of Church to the defendant, based upon the judgment, execution, recovery of possession and attornment, above referred to, conferred no title as against the plaintiff. This proposition is sought to be deduced from certain dealings and transactions between Church and the plaintiff's father, Joseph I. Shultes, whereby it is claimed that the latter was reinstated in all the rights that he had prior to the proceedings to recover possession under the judgment. It is said that the plaintiff's father had, under the statute, six months in which to redeem the land after the delivery of possession to Church under his judgment, and that by agreement this time was extended to April, 1885; that such redemption was made, either wholly or partially, and that the deed to the defendant when given was subject to all the rights and equities that Shultes obtained under his mortgage title.

"With respect to the various considerations submitted in support of these general propositions, it is quite sufficient to say that the plaintiff gave no proof to show that his father ever in fact redeemed, or attempted to redeem, this land. There is no proof in the record to show that Church ever intended to surrender or waive any right which he obtained under the judgment and execution. Nor is there any proof upon which it could properly be found that Shultes in his lifetime attempted by any acts or arrangements on his part

to restore the situation as it existed prior to the execution of the judgment under which defendant claims.

"Church was the owner of a money judgment against Shultes. It had no relation to his title to the land in question. If it was paid in full it would not in any way affect that title. The various agreements, stipulations and payments to which our attention has been called and which appear in the record, relate to this judgment which Church held and Shultes was bound to pay. It is to be inferred, also, from the proof that Church claimed that Shultes owed him certain arrears of rent which had accrued some time between the rendition of the judgment and its execution in 1883. The dealings between Church and the plaintiff's father relate entirely to these personal claims and not to the judgment under which possession had been obtained, or to any right of redemption that remained in Shultes.

"The learned counsel for the plaintiff has, we think, misapprehended their true nature and legal effect. All claim to or interest in the land in question which the plaintiff's ancestor ever had was subject to the judgment at the suit of Van Rensselaer, and when that judgment was enforced these rights, whatever they were, disappeared, and nothing took place afterwards between him and the purchaser under that judgment that was effectual to restore them. There was no redemption and no waiver by Church of any right which he obtained by virtue of the execution of the judgment and the attornment of the parties in possession to him. Therefore, the title and possession of the defendant were not in any way impaired or affected by the transactions and dealings between Church and Shultes in regard to the personal claims referred to. It is quite clear, we think, that no such force can be given to the proofs in regard to these transactions as is claimed by the learned counsel for the plaintiff. They could afford no basis for a finding by the jury that Shultes ever redeemed, or attempted to redeem, the land in question from the judgment in ejectment, or that Church intended to or did waive any right that he acquired under the judgment or in any other way qualified or impaired his title.

"It follows that the learned trial judge was correct in directing a verdict in favor of the defendant.

"The other exceptions in the case present no questions that require discussion, or any error that would justify a new trial.

"The judgment must, therefore, be affirmed, with costs."

*William Youmans* for appellant.

*George L. Stedman* for respondent.

O'BRIEN, J., reads for affirmance of judgment, with costs. All concur, except PECKHAM, J., taking no part.

---

MICHAEL TOOMEY, Respondent, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

Reported below, 4 Misc. Rep. 392.
(Submitted October 9, 1895; decided October 29, 1895.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 6, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also an order denying defendant's motion for a new trial.

*Hamilton Odell* for appellant.

*J. Aspinwall Hodge, Jr.,* for respondent.

Judgment affirmed, with costs; no opinion.
All concur.

DENNIS NUGENT, Appellant, *v.* THE ATLAS STEAMSHIP COM-PANY, Respondent.

Reported below, 61 Hun, 626.
(Argued October 10, 1895; decided October 29, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 7, 1891, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court.