THE SECOND NATIONAL BANK OF THE CITY OF ELMIRA, N. Y., Appellant, v. CHARLES WESTON, as Executor of the Last Will and Testament of ABIJAH WESTON, Deceased, et al., Respondents.

1. PROMISSORY NOTE — USE BY ONE MEMBER OF FIRM NAME AS ACCOMMODATION — QUESTION OF RATIFICATION BY COPARTNERS.   The failure of the other members of a partnership to stop their co-member from using the firm name for the accommodation of third parties, or to give notice of his want of authority so to do, after repeated offenses, constituting a systematic and persistent course of conduct known to the other members and privately objected to by them, constitutes evidence of acquiescence and ratification, which raises a question of fact as to their good faith and his implied authority.

2. CONTINUANCE OF PARTNERSHIP, AS TO THIRD PERSONS, AFTER DISSOLUTION.   A partnership and the authority of one member to bind the other by his acts continue, notwithstanding a formal dissolution, as to third persons who knew of the existence of the firm, acted in good faith and had no notice, either actual or constructive, of the dissolution.

3. ACCOMMODATION PAPER — BONA FIDE PURCHASER.   Other indorsements on a note subsequent to that of the payee, at the time when he transfers it for value, before maturity, do not charge the purchaser with notice that the makers executed the note for the payee's accommodation.

4. NOTICE OF ACCOMMODATION CHARACTER OF FIRM NOTE — QUESTION FOR JURY.   A statement to a purchaser by the payee, that a note executed

in a firm name was given to him "to use in his matters," does not conclusively establish notice to the purchaser of the accommodation character of the note, where it was made in connection with a statement that property had been transferred to the firm, and that the paper was given back to him on account of it; but the question is for the jury.

5. PURCHASER OF NEGOTIABLE PAPER — DUTY AS TO INQUIRY.   The purchaser of negotiable paper for value, and before maturity, is not bound at his peril to be on the watch for facts which might put a very cautious man on his guard.

6. IMPLIED WAIVER OF RIGHT TO GO TO JURY.   The plaintiff in an action does not impliedly waive his right to go to the jury by apparently acquiescing at first, when defendant moved for the direction of a verdict, in the position that there was no question of fact, where, before the motion was decided, and after the court announced that it would follow the decision in another case, he asks to go to the jury upon the whole case and excepts to the refusal of his request.

7. REQUEST TO GO TO JURY GENERAL OR SPECIAL.   A general request to go to the jury upon all the questions of fact in the case is sufficient to save a party's rights upon the direction of a verdict for the adverse party, where no question was raised by the court or counsel as to the particular question it was desired to have the jury pass upon.

8. DIRECTION OF VERDICT — EXCEPTIONS — NECESSITY OF REQUESTING SUBMISSION OF FACT.   An exception to the direction of a verdict is sufficient to present the question upon appeal, without requesting that any fact be submitted, in the absence of implied consent that the case be decided by the court.

*Second Nat. Bank* v. *Weston*, 31 App. Div. 403, reversed.

(Submitted January 9, 1900; decided January 23, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 29, 1898, which overruled the exceptions of the plaintiff and ordered judgment for the defendants on a verdict directed in their favor upon a trial before a jury.

This action was brought to recover the sum of $3,925.71, with interest from December 30th, 1891, upon a promissory note for that amount, dated that day, signed "Weston Brothers," and payable eighteen months after date to the order of George E. Ramsey, at the First National Bank of Olean, for value received, with interest. It was indorsed by the payee as first indorser, and by the firm of W. H. & D. C. Conklin as second indorser. The defendants, Abijah and

Orren Weston, alone answered, alleging that the firm of Weston Brothers, composed of themselves and William W. Weston, was dissolved on the 3d of January, 1892, and that their firm name was fraudulently signed to said note by William W. Weston, after the dissolution of the firm, for the accommodation of the payee.

Upon the trial it appeared that said firm of Weston Brothers had been in existence for many years prior to the 3d of January, 1892, when it was dissolved, but no actual notice of the dissolution was given to the plaintiff, and no constructive notice was given through the publication of an advertisement in a newspaper. Evidence was given tending to show the same facts relating to the implied authority of William W. Weston, which were considered in a case against these defendants, reported in 159 N. Y. 201.

The note in question was discounted by the plaintiff in March, 1893, the rate of discount having been seven and one-half per cent. It was in fact made at about the time it was discounted, and was dated back, but of this the plaintiff had no notice. It was given to renew in part the last of a series of three notes for $5,000 each, made and indorsed by the same parties, and discounted by the plaintiff. At the close of the evidence the court, on motion of the counsel for the defendants, directed a verdict in their favor, although the counsel for the plaintiff asked to go to the jury upon the whole case. After affirmance by the Appellate Division the plaintiff came here.

Further facts appear in the opinion.

*C. S. Cary* for appellant. The plaintiff became the transferee of the note in suit for value in the usual course of business, and under circumstances which do not operate as constructive notice of any facts which impeach its validity. (Daniel on Neg. Ins. § 819; *F. Nat. Bank* v. *Green*, 43 N. Y. 298; *A. E. Nat. Bank* v. *N. Y. B. Co.*, 148 N. Y. 703; *Grant* v. *Walsh*, 145 N. Y. 507; *Cheever* v. *P.*, etc., *R. R. Co.*, 150 N. Y. 59.) When the plaintiff showed that it had

received the note before maturity and for value, and under circumstances showing no want of good faith, the burden is thrown upon the defendant to show facts establishing bad faith, and the plaintiff is not required to prove a negative. (*Cowing* v. *Altman*, 71 N. Y. 435 ; *Nickerson* v. *Ruger*, 76 N. Y. 279 ; *Wilson* v. *M. E. R. Co.*, 120 N. Y. 152 ; *Monroe* v. *Cooper*, 5 Pick. 412 ; Daniel on Neg. Inst. § 819 ; *A. E. Nat. Bank* v. *N. Y. B. Co.*, 148 N. Y. 703 ; *Ramsdell* v. *Morgan*, 16 Wend. 574 ; *Keutgen* v. *Parks*, 2 Sandf. 60.) Plaintiff was entitled to go to the jury upon the whole case. It did not ask the court to direct a verdict in its favor, and in no way waived that right. (*Appleby* v. *A. F. Ins. Co.*, 54 N. Y. 261 ; *Converse* v. *Sickles*, 146 N. Y. 209 ; *Trustees* v. *Kirk*, 68 N. Y. 459.)

*J. H. Waring* for respondents. The note in suit was not binding on the defendant's testator while it remained in the hands of the payee. (*Smith* v. *Weston*, 81 Hun, 87 ; 159 N. Y. 194 ; *Foot* v. *Sabin*, 19 Johns. 154 ; *Fielden* v. *Lahens*, 6 Abb. [N. S.] 341 ; *Elliott* v. *Dudley*, 19 Barb. 326 ; *Dob* v. *Halsey*, 16 Johns. 34 ; *Sanford* v. *Mickles*, 4 Johns. 224 ; *Nat. Bank* v. *Norton*, 1 Hill, 572 ; *Mitchell* v. *Ostrom*, 2 Hill, 520 ; *Lusk* v. *Smith*, 8 Barb. 570.) The burden was on the plaintiff to show either that it was a *bona fide* purchaser of the note in suit, or that its making was authorized or ratified by the defendant's testator. (*Smith* v. *Weston*, 159 N. Y. 194 ; *F. N. Bank* v. *Green*, 43 N. Y. 298 ; *O. N. Bank* v. *Carll*, 55 N. Y. 440 ; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357 ; *O. N. Bank* v. *Diefendorf*, 123 N. Y. 191 ; *Joy* v. *Diefendorf*, 130 N. Y. 6 ; *N. P. Bank* v. *G. A. M. W. & S. Co.*, 116 N. Y. 281 ; *Fielden* v. *Lahens*, 6 Abb. [N. S.] 341 ; *Stull* v. *Catskill Bank*, 18 Wend. 466.) Even if the evidence presented a question of fact, the plaintiff waived his right to have it submitted to the jury. (*Muller* v. *McKisson*, 73 N. Y. 195 ; *O'Neill* v. *James*, 43 N. Y. 84 ; *Winchell* v. *Hicks*, 18 N. Y. 558 ; *Grier* v. *Hazard*, 39 N. Y. S. R. 74 ; *Smith* v. *Weston*, 159 N. Y. 194.)

VANN, J. The main questions presented by this appeal have already been passed upon by us in another case against the same defendants, but recently decided. (*Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201.) Upon a similar state of facts we then held that there was a question of fact for the jury as to the good faith of Abijah and Orren Weston in simply remonstrating privately with their brother William against his constant use, during many years, of the firm name for the accommodation of his friends, and as to his implied authority to do so. Our reasons for holding that the same question of fact is presented in this case may be found in our opinion rendered on the former appeal.

We further held that the copartnership of Weston Brothers and the authority of William to bind his associates by his acts, continued as to third persons, acting in good faith, who knew of the existence of the firm, but had no knowledge, either actual or constructive, of the dissolution thereof. That disposes of the same question presented in this case upon substantially the same facts.

There is one feature, however, which distinguishes this case from the others against these defendants that have been before us. (*Smith* v. *Weston*, 159 N. Y. 194; *Monongahela Bank Case, supra.*) The notes formerly under consideration were presented to the purchaser, either by the maker, or by a party who would not, in the ordinary course of business, have them in his possession unless they were accommodation paper. This fact, after evidence was given tending to show that the notes had been signed by William in the name of the firm without the consent of the other members, was held to involve such notice to the purchaser as to cast upon him the burden of showing that he was a *bona fide* purchaser, or that the use of the firm name by the one partner was authorized by his copartners. In the case now before us, the note was presented to the plaintiff by the payee, to whom it had apparently been delivered by the Weston Brothers, as makers, in the usual course of business, and hence, upon the face of the transaction, there was nothing to put the purchaser upon inquiry.

The plaintiff had a right to assume, in the absence of actual notice of any defect, that the relation to the paper of every party whose name had been written upon it was precisely what it appeared to be. (*Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 Y. 59.) While the plaintiff may have had notice that the subsequent indorsers, who do not defend, had indorsed for the accommodation of some other party to the note, the presentation of the note by the payee cast no suspicion upon the capacity in which the Weston Brothers had signed it. As to them, it was apparently business paper, and there was nothing for the plaintiff to inquire about in that regard.

The defendants, however, gave evidence tending to show that the note was in fact made outside of the business of the firm by William W. Weston without the authority of his copartners, and thereupon it became necessary for the plaintiff to show either that it was a *bona fide* purchaser or that the making of the note was authorized. (*Smith* v. *Weston, supra.*) In order to meet the burden of proof thus shifted upon it, the plaintiff proved that it purchased the note before maturity for value, and then called its president, who testified that he was the manager of its bank and had known of the existence of the firm of Weston Brothers and of their " good credit " for a great many years ; that when the note in suit was presented by the payee, the president asked him what " this long time paper " meant, and was informed " that a deal had been made between the Westons and himself by which this paper was secured to them, and it was given to him to use in his matters and he had it for that purpose. He did not say in express terms that it was business paper. He did not go into the details of it. He said to me the transaction was one by which property had been transferred to the Westons and this paper was given back to him on account of it. That was the situation. There was nothing further said about it on that occasion."

This evidence did not conclusively establish notice to the plaintiff that the note was accommodation paper. While it may have permitted, it did not, as matter of law, require that

inference. The. statement of Mr. Ramsey that the note was given to him " to use in his matters " should be read in connection with. his further statement, made at the same time, that " property had been transferred to the Westons and this paper was given back to him on account of it." This permitted the inference that the note was business paper, given in the course of a business transaction. Where conflicting inferences may be drawn from undisputed testimony, a question of fact is presented for the jury. The purchaser of negotiable paper, for value and before maturity, is not bound at his peril to be on the watch for facts which might put a very cautious man on his guard. As we said in a late case: " He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrine, will prevail." (*Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 N. Y. 59, 66.)

It is, however, insisted that the plaintiff waived its right to have any question submitted to the jury by the course pursued at the trial.

At the close of the evidence the trial judge asked the counsel upon either side what there was to go to the jury, and each replied that he did not know. The judge then said that there was no conflict in the testimony, and that the question was whether the Westons gave such notice of the dissolution as they should have given under all the circumstances, and he inquired, " that is about all there is of it, is it not ?" Thereupon the counsel for the defendants asked the court to direct a verdict in their favor. The court then discussed the facts and said he thought he ought to take the same course as had

been taken in certain other cases against the Weston Brothers, intimating that if he were to dispose of the matter as an original question he might make a different disposition. He alluded to the facts relating to the knowledge that " the Westons had of the use which was made of the firm name by W. W. Weston," and said : " There is no controversy as to the length of time that the knowledge had existed and the extent to which this name had been used." After making some remarks on the question of dissolution, he concluded : " I think I shall send it with the other cases, agreeing with Judge SPRING, for the purpose of getting a decision." Before anything further was said or done, the counsel for the plaintiff asked to go to the jury upon the whole case, and excepted to the refusal of the court to allow him to do so. Thereupon a verdict was directed in favor of the defendants and the plaintiff's exceptions were ordered to be heard in the first instance by the Appellate Division.

The principle upon which a directed verdict is sustained, even when there is a question of fact, is that the defeated party, expressly or impliedly, waived his right to go to the jury. In the case of an express waiver, there is no reason for caution on the part of the courts, but cases of implied waiver frequently involve such hardship and injustice that the rule should not be unduly extended. There is another reason for conservatism in this direction, and that is the verdict is usually directed without time for reflection, and with no intention on the part of the court to pass upon any question of fact, so that the rights of a party may be conclusively determined against him, unconsciously, by the trial judge, without exercising his judgment upon the facts. Mere convenience in transacting business by the court should not prevail over the administration of justice, which is the object for which courts are organized.

When both parties move for the direction of a verdict, they impliedly consent that the court shall decide every question of fact in the case, and thereby waive the right to go to the jury. As was said by Judge ANDREWS in *Thompson* v.

*Simpson* (128 N. Y. 270, 283), " The effect of a request by each party for a direction of a verdict in his favor clothed the court with the functions of the jury, and it is well settled that in such case where the party whose request is denied, *does not thereupon request to go to the jury on the facts*, a verdict directed for the other party · stands as would the finding of a jury,   *   *   *."

In *Shultes* v. *Sickles* (147 N. Y. 704) both parties asked the trial judge to direct a verdict, each in his own favor, and in reviewing the case the court said : " While it is true that in a case where both parties request the court to direct a ver- · dict, the court is thereby clothed with the functions of the jury, with respect to any questions of fact in the case, and in the absence of a request to go to the jury by the party against whom the verdict is directed the decision stands in the place of a verdict, yet in this case the plaintiff, upon a denial of his motion, made the request to have the case submitted to the jury. He was not precluded from making this motion by his previous request to have a verdict directed in his favor, and if there was any evidence competent to submit to the jury upon the disputed questions of fact the denial of his motion would probably be error."

The plaintiff did not move for the direction of a verdict, although the defendants did, and it did not acquiesce in the proposed action of the court, but at once made the necessary request. Until final action was taken by the actual direction of a verdict, the plaintiff's counsel could change his mind and ask to go to the jury. While, at first, he led the court to believe there was no question of fact, afterward there was an intelligent discussion of the evidence by the trial judge which suggested reasons why the case should be submitted to the jury. The intimation of the trial judge that, but for the action taken in the other cases, he would either direct a verdict for the plaintiff or submit the case to the jury, doubtless indicated to counsel the propriety of making the request, which he at once made. The court was not misled, because the request was made before the verdict was directed, and the

defendants were not injured, because their legal rights were not affected. Under these circumstances it would be harsh and unjust to hold that the plaintiff waived a right, which it obviously did not intend to waive, and which the court knew it did not intend to waive. Waiver depends on intention, or misleading conduct, but how can there be a waiver with neither? While the trial judge is entitled to be fairly treated, so long as the discussion is open and the court has not actually directed a verdict, the request to go to the jury is in time. A party is not estopped from claiming an important right by a mere intimation from the court of what he may do. Such a rule would be technical and arbitrary, and would not tend to promote justice. It would give a man his day in court and then take it away from him. It is not until the court has acted that the right of a party to act is lost. When the trial judge, in discussing the case, suggested a question of fact in relation to the authority of William Weston to sign accommodation paper in the name of his firm, and then intimated that his action would be merely formal by following the course of another judge, without exercising his own judgment, the circumstances were changed and the plaintiff's counsel could properly ask to go to the jury, even if what he had previously said would otherwise have amounted to a waiver. No question was raised by the court, or by the counsel for the defendants, as to what particular question of fact the plaintiff desired to have the jury pass upon, and the request as made was to have them pass upon the whole case. Under such circumstances it was not necessary for the plaintiff to name a particular question of fact any more than when a motion to nonsuit is granted. (*Train* v. *Holland Purchase Ins. Co.*, 62 N. Y. 598; *Clemence* v. *City of Auburn*, 66 N. Y. 334.)

When a verdict is directed an exception to the ruling, in the absence of implied consent that the case be decided by the court, is sufficient to present the question upon appeal without requesting that any fact be submitted. (*Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459; *First National Bank* v. *Dana*, 79 N. Y. 108, 116.)

67

We think there were questions of fact for the jury, and that the court erred in directing a verdict after the plaintiff had requested that the whole case be submitted to them.

The judgment should be reversed and a new trial granted, with costs to abide event.

PARKER, Ch. J., O'BRIEN and HAIGHT, JJ., concur; MARTIN, J., concurs in result; GRAY and BARTLETT, JJ., not voting.

Judgment reversed, etc.