## SMITH et al. v. RUSSELL. *
### No. 10089.

Circuit Court of Appeals, Eighth Circuit.
March 11, 1935.

*Rehearing denied June 24, 1935.

M. A. Matlock, of Little Rock, Ark., for appellants.

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Fred A. Isgrig, U. S. Atty., of Little Rock, Ark., on the brief), for appellee.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

FARIS, Circuit Judge.

Plaintiffs, constituting all of the surviving former stockholders and distributees, in liquidation of the Smith Arkansas Traveler Company, a corporation, together with the legal representatives of a deceased stockholder and distributee, brought this action, against the former Collector of Internal Revenue, to collect the sum of $7,920, paid to such collector on income tax of the Smith Arkansas Traveler Company for the year 1929. For brevity, the above company will be referred to hereinafter as the company, appellants herein will be called plaintiffs, and appellee, defendant.

A jury being waived, the case was tried to the court without a jury, and at the close of the evidence for plaintiffs defendant offered, what is called in the record, a motion for judgment in favor of the defendant. This motion the court sustained, and plaintiffs appealed in common form.

The case arises out of the following facts: The Smith Arkansas Traveler Company was incorporated in 1926 under the laws of Arkansas. Through the efforts of its officers and stockholders it procured the passage of local laws by the Legislature of Arkansas, which in effect gave it a virtual monopoly of operation over the principal state highways into and out of Little Rock, thus rendering its property, largely franchises, valuable. The company sold its properties on January 2, 1929, for a comparatively large profit, relinquished its corporate charter and dissolved. On this net profit, after paying its debts, it became liable to pay income taxes. The dispute here has to do with two contested items of deductions from such profits, claimed by plaintiffs. These arose thus:

In 1927, the taxpayer issued $100,000 par value 7 per cent. 10-year gold bonds, securing same by a deed of trust on its properties. These bonds were all distributed among its officers and stockholders in payment for alleged services rendered largely, if not wholly, in procuring the passage of the local law already mentioned. The reason for the issuance of these bonds was, as the record shows without contradiction, because the plaintiffs desired to protect the company's property in case of damage suits.

In 1927 the officers and stockholders to whom these bonds had been distributed paid income taxes thereon, on the basis of 41 cents on the dollar, or on a total value of $41,000, which was then estimated as the fair value of the entire issue of these bonds. On January 2, 1929, the sale of the company's properties was finally consummated and closed, and in that same year the bonds were called and paid, in the full sum of $100,000. The plaintiffs were allowed as a credit on income for 1929, arising from the payment of the bonds, the sum of $41,000 only. This was the value of the whole $100,000 issue of bonds as fixed and accounted for as income in 1927 by the plaintiffs to whom the bonds had been apportioned and distributed.

The plaintiffs contend that the total deduction should, under the facts and the law, have been $100,000 instead of $41,000. So the dispute largely rages about this point. This action is therefore to recover taxes paid on $59,000, plus the sum of $10,000 paid for a fee to an attorney for brokerage services in consummating the sale. The facts as to this fee, and as to the time of payment thereof, are made clear by an admission made on the trial, which runs thus:

"It is stipulated and agreed that the attorney's fee of $10,000, in controversy, was paid for services rendered in connection with the sale of the property by the corporation, that it was actually paid by the corporation in 1928, was actually charged as a deduction on income tax return in 1928 by the Commissioner, in his audit of it. The sale, however, of the property, for which the fee was paid for services rendered in connection with it, was not made and consummated until January 2, 1929."

"And also that in reporting the taxable income gain in 1929, the return of the corporation did not reflect, did not include as an expense, the $10,000 item just mentioned; that the first time the Commissioner of Internal Revenue's attention was called to the failure to deduct this ten-thousand dollars item in refund of the total sale price of the assets, was contained in claim for refund filed which is attached as an exhibit to the complaint. * * * And

that the services were actually rendered in 1928."

In limine, complaint is voiced that the trial court erred in refusing to pass on some nineteen declarations of law which, subsequent to the court's sustaining the motion for judgment on the evidence, were offered by the plaintiff.

■ The action taken by the court in sustaining the motion for judgment on the evidence was tantamount, and in all legal ways similar to directing a verdict in a trial to a jury in a law case. In some of the states the motion made is called a demurrer to the evidence. In such cases, and in the case at bar, the trial court in effect holds that conceding the truth, and giving the most favorable effect and inferences to all of the evidence offered, by the plaintiff, yet under no tenable theory of any applicable law is he entitled to recover. In such case, of course, it is the duty of the trial court to sustain a demurrer to the evidence. Upon the point the cases are legion, and the test of the duty, while varying slightly in expression, is in effect quite uniform. Ferguson v. Arthur, 117 U. S. 482, 6 S. Ct. 861, 29 L. Ed. 979; Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420; Berbecker v. Robertson, 152 U. S. 373, 14 S. Ct. 590, 38 L. Ed. 484.

■ No cases are cited to the effect that a federal district court, after sustaining a demurrer to the evidence, or a motion for judgment on the evidence, in a jury-waived case, is required to pass upon and give or refuse declarations of law. We know of no such cases. The reason of the thing seems to render such act unnecessary. This for the reason that if, upon the facts proved, there is any applicable law which warrants submitting the case to the jury, this must be done. By the very act of sustaining the demurrer to the evidence, or in directing a verdict, or in sustaining a motion for judgment on the evidence, the court implicitly rules that whatever the law may be, the evidence adduced will not sustain a verdict or judgment for plaintiff. Such act of the court implies that there is no disputed fact left to be found by the trier or triers of fact, because the motion will not lie, so long as a material fact is in issue.

■ So the result is that the whole range of applicable law is open to the plaintiff, on an appeal in a case like this, so far, at least, as concerns any alleged error of the court bottomed on a failure to pass on declarations of law. Therefore, we think the trial court was not required to at all consider the proffered declarations of law. Second Nat. Bank of Elmira v. Weston, 161 N. Y. 520, 55 N. E. 1080, 76 Am. St. Rep. 283.

■ There were no issues of fact in the case. All of the evidence came from plaintiffs' witnesses and documents, and from the cross-examination of plaintiffs' witnesses by the defendant. From this evidence it conclusively appeared that the motive for placing the mortgage on the assets of the Company was "to protect the corporate assets from damage suits." The motive or reason for issuing the bonds and securing them by a mortgage designed to protect corporate assets is, of course, not conclusive on the one question decisive of the point here up for judgment. Which is and was, as counsel for plaintiffs conceded it to be on the trial, whether the officers and directors (herein plaintiffs) of the company to whom the whole $100,000 was distributed "had rendered that much service to the company." The burden to prove that the service was fairly and reasonably worth $100,000 was on the plaintiffs. Botany Mills v. United States, 278 U. S. 282, loc. cit. 289, 49 S. Ct. 129, 73 L. Ed. 379; Wickwire v. Reinecke, 275 U. S. 101, 102, 48 S. Ct. 43, 72 L. Ed. 184. The court was permitted to consider, among the other facts, the reason for the issuance of these bonds, as bearing on whether they were given to the taxpayers as a mere gratuity, or in actual payment for services reasonably worth $100,000.

■ It is hornbook law, requiring neither citation of cases nor exposition, that a potential corporate taxpayer may not, in order to minimize income, donate such income in any given year to its officers or stockholders. While the point gets into this case in an indirect way, that is, by considering the effect of section 23 of the Revenue Act of 1928 (26 USCA § 2023), on and in connection with Section 113 of that Act (26 USCA § 2113), it is yet the decisive question in the case. And the burden was on the plaintiffs to show that the services rendered by the donees of the bonds were reasonably worth more than $41,000, which in effect was the value put on the bonds in 1927. This, we think, they failed to do.

■ Touching the right to deduct the attorney's fee, the stipulated facts disclose, we think, the correctness of the ruling by the trial court. The mere fact that the sale was not finally closed until January 2, 1929,

in no wise militates against the view that the services rendered and for which the fee was paid may lawfully be allocated to the tax year 1928. This, in fact, was done by the company, which paid and took credit in that tax year for this sum of $10,000, as for an expense incurred in that year. It is clear from the entire situation and the very terms of the stipulation quoted that largely, if not wholly, this fee was earned in 1928, and such being the fact, we know of no statute which precludes charging it against income for that year, as was done. The judgment below was correct and should be affirmed, which accordingly is ordered.