(42 App. Div. 147.)

MANHATTAN SAV. INST. v. NEW YORK NAT. EXCH. BANK.

(Supreme Court, Appellate Division, First Department.   June 30, 1899.)

1. MUNICIPAL BONDS—NEGOTIABILITY.
   Municipal bonds do not lose their negotiable character simply because they are sealed instruments.
2. SAME.
   A statutory requirement that a certain issue of municipal bonds should be registered in the city clerk's office, in a book kept for that purpose, does not of itself make the bonds nonnegotiable.
3. SAME—INCOMPLETE INSTRUMENTS.
   The leaving a blank for the name of a payee in a bond delivered for use is equivalent to making the bond payable to bearer, until the authority to fill up is exercised by a bona fide holder, whether immediate or remote.
4. SAME—BONA FIDE HOLDERS.
   The fact that negotiable bonds were stolen only throws on the holder the duty to show the circumstances under which it obtained them, and that such circumstances constituted it a bona fide holder.
5. SAME—NOTICE OF THEFT.
   A bank which takes municipal bonds as collateral for a loan is not bound to take notice of an advertisement of the theft of such bonds published in newspapers 18 years before.

Action by the Manhattan Savings Institution against the New York National Exchange Bank. There was a judgment on a verdict directed for plaintiff, and defendant's exceptions were ordered to be heard in the first instance in the appellate division. Exceptions sustained.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Percy S. Dudley, for the motion.
E. S. Rapallo, opposed.

PATTERSON, J.   On the trial of this cause a verdict was directed for the plaintiff, and the defendant's exceptions were ordered to be heard in the first instance at the appellate division. The plaintiff brought replevin to recover 10 bonds which it claimed to own, and which it alleged the defendant wrongfully detained. The answer put in issue the ownership of the bonds, and set up as an affirmative defense that they were negotiable securities; that they were pledged to the defendant by one Pell, 9 of them being so pledged as collateral to a loan of $7,500, and delivered to the defendant at the time the loan was made, and the tenth being given as additional security some time after the loan was actually made; and that $7,000 of the money loaned had not been repaid, wherefore the defendant claimed the right to retain the securities. The sheriff took the bonds under the writ, and delivered them to the plaintiff. There can be no doubt that the plaintiff is entitled to the tenth bond, and, indeed, no claim to the contrary is made by the defendant.

The material facts are the following: The securities in suit were part of an issue of bonds made by the city of Yonkers under authority of an act of the legislature (chapter 297, Laws 1875), in which, among other things, it was provided (section 1) that "said bonds shall be

signed by the mayor and city clerk and the corporate seal of the city shall be attached thereto and they shall be registered in the city clerk's office in a book to be kept for that purpose." The bonds were executed in the manner required, and some time thereafter, and apparently about the 16th of February, 1896, they were delivered by the authorities of the city of Yonkers to, and they became the property of, the plaintiff. A record was made in a book kept by the financial officer of the city of Yonkers of the numbers of the bonds issued to the plaintiff, and in one of the columns of that book, in connection with the bonds, is an entry, "Bonds Nos. 531 to 550, inclusive, owned by the Manhattan Savings Bank." The 10 instruments in suit bear numbers within that series. In none of the bonds issued by the municipality was there inserted the name of a payee, but there was left in each a blank space for the insertion of such name. They all recited that the city of Yonkers "is justly indebted to or ——— in the sum of one thousand dollars lawful money," etc. They were all coupon bonds, and had attached to them warrants or coupons, payable to bearer, for semiannual interest as it accrued. They seem to have remained in the possession of the plaintiff, with the blank spaces unfilled, until October 27, 1878, when they were stolen by burglars who broke into a vault in which the plaintiff kept its valuables, and rifled it of these and several millions of dollars of other securities. No trace of the stolen property was found for some 16 years, and nothing is disclosed concerning them during that interval, or until they were given in pledge by Pell to the defendant, the blank spaces still remaining unfilled.

The defendant's title is derived mediately from the thief. It is a bona fide holder. It parted with value for the instruments before their maturity. It is not denied that a good title to them was acquired, if they are negotiable instruments, and whether they are such is the principal question before us. They are under seal, and were required to be so by the law authorizing them; but municipal bonds do not lose their negotiable character or quality simply because they are sealed instruments (Bank of Rome v. Village of Rome, 19 N. Y. 20), nor do other corporate bonds executed in that manner, if they are otherwise negotiable in form (Brainard v. Railroad Co., 25 N. Y. 496; Bank v. Faurot, 149 N. Y. 535, 44 N. E. 164). Nor were these bonds made nonnegotiable by force of the statute under and by which they were authorized. The requirement of the law was only that they should be registered in the city clerk's office, in a book kept for that purpose. That did not restrict the power of the city to omit bonds of one particular class, or such only as should upon their face make title in a named obligee, who alone would transfer that title by assignment. The registry was required for the protection of the city. The law imposed no limitation upon its ability to issue bonds payable either to bearer, or to a named payee, or to his order, or to his assignee, or to issue them, with or without interest coupons, payable to bearer or to the holder thereof on presentation.

It is contended, however, by the plaintiff, that when these bonds came into the possession of the defendant, they appeared upon their

face to be incomplete, and that in that condition they were not negotiable. Undoubtedly, if the incomplete instruments had been stolen from the city of Yonkers, not even a bona fide holder from the thief would have taken a good title, nor could he have enforced them against the city. Ledwich v. McKim, 53 N. Y. 307. But a party issuing an incomplete instrument may, under certain circumstances, be liable upon it, and he may put it in circulation and make it negotiable. Where the maker of such an instrument delivers it for use, the law implies that he intends to confer upon a bona fide holder the authority to perfect the incompleteness. In the case last cited Judge Folger very clearly and pointedly stated the rule upon that subject, and the reason upon which it was founded. In the case before us there was the voluntary delivery to the plaintiff of these bonds, for use, in their incomplete state. The effect of leaving a blank for the name of a payee is equivalent to making the bonds payable to bearer (Dinsmore v. Duncan, 57 N. Y. 573), until the authority to fill up, implied from their issuance in blank, is exercised by a bona fide holder; for that authority is not limited to the person to whom the instrument is first issued. Leaving a blank space for the name of the payee gives to any bona fide holder for value the implied authority to fill the blank with his name or that of a third party. That proposition has been questioned, but is fully sustained by the great weight of authority. As early as 1813, in the case of Cruchley v. Clarance, 2 Maule & S. 90, it was held in the king's bench that a bill of exchange drawn and issued with a blank space for the insertion of the name of the payee might be filled up by a bona fide holder, and the drawer would be bound. That was an action against the drawer, and one count of the declaration stated the bill to have been made payable to the order of the plaintiff and another count to the order of ——; thereby meaning to the order of such person as the defendant should cause to be named and inserted in the said bill as payee. Lord Ellenborough held that the defendant, by leaving the blank, undertook to be answerable for it when filled up in the shape of a bill. Blanc, J., declared it was the same thing as if the defendant had made the bill payable to bearer. Bayley, J., held that the issuing the bill in blank without the name of the payee was an authority to a bona fide holder to insert the name. In Bruce v. Westcott, 3 Barb. 377, it is said that, where there is a blank which renders the bill imperfect, the holder, in some special cases, has been allowed to fill it; "as, to insert a payee (Cruchley v. Clarance, 2 Maule & S. 90; Crutchly v. Mann, 5 Taunt. 529; Atwood v. Griffin, 2 Car. & P. 368), or the sum, according to the fact (Boyd v. Brotherson, 10 Wend. 93; Clute v. Small, 17 Wend. 338), or the date (Mitchell v. Culver, 7 Cow. 336), and perhaps the time of payment by the maker after indorsement (Bank v. Schuyler, Id. 338, note)." In Kitchen v. Place, 41 Barb. 465, the same rule is stated as to the implied authority to fill the blanks. In that case the place of payment was inserted in the blank. In Dinsmore v. Duncan, 57 N. Y. 577, a note was stolen from the Adams' Express Company, which recited, "Three years after date, the United States promise to pay to the order of —— one thousand dollars," etc. That was held to be a negotiable instrument.

It was objected that the instrument, on its face, was not payable to any particular person, but the name of the payee was left blank. It was held that that fact did not affect the negotiability of the note; that any holder had the right to fill in his name in the blank space, and thus make the note payable to himself, and until that is done it will circulate as though payable to bearer. 1 Pars. Notes & B. 33; 2 Pars. Notes & B. 448; Crutchly v. Mann, 5 Taunt. 529; Greenhow v. Boyle, 7 Blackf. 56; Attwood v. Griffin, Ryan & M. 425. The same rule has been announced by the supreme court of the United States. White v. Railroad Co., 21 How. 575. Thus, it would appear that these bonds were negotiable instruments. The plaintiff retained them in that form, and could have transferred them without filling in the blanks, and thus continued their negotiability. The fact that they were stolen only threw upon the defendant the necessity of showing the circumstances under which it obtained them, and that such circumstances constituted it a bona fide holder. Bank v. Kidder, 106 N. Y. 221, 12 N. E. 577. That it did. The transaction in which it acquired the notes was one entered into in the ordinary prosecution of its business as a bank. It parted with value before maturity of the bonds, and without notice of any fact that would affect the title of the pledgor. It acquired a special property in them, to the extent of its lien upon them; that is, to the amount of $7,000. We are unable to hold that the defendant was bound to take notice of an advertisement of the loss of the bonds published by the plaintiff in newspapers 18 years before the occurrence of the transaction in which the defendant became possessed of the bonds. Such advertisement was made in daily papers about the time of the robbery, and in it were given the names and numbers of bonds stolen from the plaintiff. Among them, those in suit were mentioned, and the numbers thereof given. But there is not a fact or circumstance in the proof which brings knowledge or notice of that advertisement home to the authorities of the defendant bank. The defendant obtained a good title, as pledgee, to nine of the bonds in suit.

The exceptions must be sustained, and a new trial ordered, with costs to defendant to abide the event. All concur.