## MANHATTAN SAV. INST. v. NEW YORK NAT. EXCH. BANK.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

STOLEN BONDS—PLEDGE—OWNERSHIP—NOTICE TO PLEDGEE—ADVERTISEMENT.
  Notice was given of the theft of negotiable municipal bonds by advertisement. Eighteen years thereafter they were taken by a bank as collateral for a loan. The borrower's account with the bank stood in his name as trustee, and the loan was so made to him; and he had been previously convicted of crime, and served a sentence therefor. *Held*, that such facts were insufficient to defeat the bank's title to the bonds, because constituting notice of, or putting it on inquiry as to, the ownership of the bonds, where the borrower's account with the bank was opened as trustee, and with commissions earned by him in a sale of stocks through the bank's agency, the bonds contained nothing to show a trust relation, and no knowledge was shown of such conviction and sentence, which occurred five years before, and between which and the bond transaction such borrower had numerous dealings with the bank, presenting and discounting papers of a firm having large capital and credit, of which his brother was a member, which was promptly cared for, and doing the usual business of a customer of the bank, in the usual manner.

Appeal from special term, New York county.
Action by the Manhattan Savings Institution against the New York National Exchange Bank. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PAT-
TERSON, and O'BRIEN, JJ.

Edward S. Rapallo, for appellant.
P. S. Dudley, for respondent.

HATCH, J. This is an action of replevin of 10 municipal bonds
issued by the city of Yonkers. In 1875 the bonds were held by the
plaintiff, from whom they were stolen, together with other securities
aggregating $3,000,000. Eighteen years after this robbery one George
H. Pell, a customer of the defendant's bank, presented the bonds to
the bank as collateral security for a loan of $7,500, which the defend-
ant granted, and has since that time had the bonds in its custody; the
loan not being repaid. This case has been once before in this court,
and upon such appeal it was determined that the bonds in question
were negotiable securities, and that, although they were stolen from
their owner, yet if the defendant, without notice of the theft, and
otherwise acting in good faith, advanced money upon them before
their maturity, it obtained good title thereto, although the plaintiff
had at the time of the robbery advertised its loss and described the
bonds. 42 App. Div. 147, 59 N. Y. Supp. 51. The defendant is there-
fore to be protected to the extent of its property interest in the bonds,
unless they were taken under such circumstances as to put it upon
inquiry or charge it with notice of the infirmity of Pell's title when it
received them. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10
L. R. A. 676. It must be regarded as settled by our former decision
that the notice given at the time of the robbery, through the public
press and otherwise, is not sufficient, standing alone, either to show
notice to the defendant, or indicate lack of care upon its part in tak-
ing the bonds. It is now insisted by the appellant, however, that this
fact, coupled with other facts and circumstances disclosed by the rec-
ord, makes a case which required the submission of the question of
notice and defendant's good faith in the transaction to the jury. The
added circumstances upon which the appellant relies consist mainly
in the fact that the account which the defendant had with Pell stood
in his name as trustee; that he was a person of bad character, who
had previously been convicted upon a criminal charge and served a
term in the state's prison. We do not think that there is anything in
the fact that Pell had the account in his name as trustee, or that he
added to his signature "trustee," upon the note, which put defendant
upon inquiry as to the infirmity of his title to the bonds. It is well
known that such accounts are frequently kept in financial institutions,
where no fiduciary relation is intended or in fact exists. A variety of
reasons induce persons so to carry their individual accounts, which the
courts have had occasion to consider many times. If the question
with respect to the form of the account in other matters had arisen
between the defendant and a cestui que trust whom Pell represented,
it might be that the defendant would have been put upon notice to
inquire into Pell's authority. Suarez v. De Montigny, 1 App. Div. 494,
37 N. Y. Supp. 503; Kirsch v. Tozier, 143 N. Y. 390, 38 N. E. 375.
The facts, however, in connection with the opening of this account,

are such as to exclude any inference of a fiduciary relation. It appears from the testimony that Pell negotiated the sale of certain gas stocks through the agency of defendant, and after such transaction he opened the account in question with the commissions earned in the transaction, and he informed the defendant at that time that the deposit which opened the account was his commissions in effecting such sale. The defendant had no reason, therefore, to suppose that this account represented any other person than Pell. The bonds were not burdened with anything to show that Pell stood in the relation of trustee to them, and nothing in that connection put defendant upon inquiry. So far as Pell's conviction of a criminal offense is concerned, there is no evidence which would justify a finding that the defendant had any actual knowledge of such fact. This conviction was had some five years prior to the bond transaction, and during the intervening time between the opening of the bank account by Pell, and the pledging of the bonds as collateral security for the loan, he had numerous dealings with the bank; had presented to it, and had discounted, the paper of Danat & Pell, a firm of lumber merchants in good standing, having a large capital and a large credit. The junior member of this firm was Pell's brother, and the notes which he presented and which were discounted were promptly cared for in the ordinary course of business. During this whole period Pell deposited the proceeds of discounted notes, made other deposits, and checked upon the account as was usual with customers making use of the bank for such purposes. In all this dealing there was scarcely a circumstance unusual in character, or from which the defendant's suspicions, acting as a person ordinarily prudent, would have been aroused that Pell was a thief or a person of bad character, and that it was unsafe to have any business dealings with him. The fact that the securities which were pledged were bonds was not unusual or singular. The first transaction which Pell had with the bank was of stocks and bonds, and the fact that this transaction was without fraud or defect was a pertinent circumstance to justify the defendant's dealing with Pell in receiving these bonds. No single circumstance which is relied upon by the appellant, nor all of them combined, is, in our judgment, sufficient to justify the finding that the bank had notice or that it was put upon inquiry with respect to the ownership of the bonds. On the contrary, the law applicable to negotiable instruments, as expressly held in Cheever v. Railroad Co., 150 N. Y. 65, 44 N. E. 701, 34 L. R. A. 69, and Bank v. Weston, 161 N. Y. 526, 55 N. E. 1080, excludes such basis as grounds upon which to predicate infirmity in the title. It is clearly excluded from the circumstances which were found sufficient in Bank v. Diefendorf, supra, to put the purchaser upon notice. It is generally recognized that the last case carried the question as to what facts and circumstances were sufficient to put the purchaser upon inquiry to the extreme, and the courts have been reluctant to carry the doctrine further. While the later decisions have reaffirmed the protection to which persons dealing in negotiable instruments are entitled, and which are essential to uphold commercial transactions, to hold that the circumstances appearing in this case are sufficient upon which notice could be charged of the infirmity of the title in

those bonds would extend the doctrine beyond that of any reported case, and shake the foundation upon which the law of negotiable paper rests. When the defendant took the last bond from Pell, it undoubtedly had notice which put it upon inquiry, and it obtained no title thereto. As to the other bonds, however, it must be protected, as a bona fide holder, to the extent of its interest therein.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.