THE MANHATTAN SAVINGS INSTITUTION, Appellant, *v.* THE NEW YORK NATIONAL EXCHANGE BANK, Respondent.

1. BONDS — WHEN TITLE TO MUNICIPAL BONDS PASSES BY DELIVERY. Municipal coupon bonds, issued under the seal of the municipality and registered in the city clerk's office in a book kept for that purpose as prescribed by the statute under which they were issued, but which statute did not require that they should be issued as registered, in contradistinction to coupon bonds, and be non-negotiable in character, are, when delivered to a purchaser thereof, negotiable, although a space for the name of the payee is left blank and it appears upon their face that they are so registered; and, unless their negotiability is thereafter restricted by the insertion of the name of some particular payee, although stolen, they are payable to any subsequent holder in good faith as the bearer.

2. WHEN PLEDGEE OF STOLEN BONDS IS PROTECTED. When such bonds are stolen from the owner, a bank, which in good faith and before maturity advances money upon them, is entitled to assert a special property therein to the extent that they stand as security for the moneys, loaned, in the absence of any circumstances imposing upon it some duty of inquiry.

3. WHEN CIRCUMSTANCES ARE INSUFFICIENT TO IMPOSE DUTY OF INQUIRY UPON PLEDGEE. The facts that the pledgor, who for several months had had an account with the bank as trustee, obtained the loan as trustee — that the corners of the bonds, which had been outstanding for twenty years, appeared to have been burned and that he was an ex-convict

1902.] Manhattan Sav. Inst. *v.* N. Y. Nat. Exch. Bank. 59

N. Y. Rep.]                    Statement of case.

and a notorious character, of which fact, however, the bank had no knowledge, cannot be considered as circumstances imposing any duty of inquiry upon it, since coupling the word "trustee" with his name as a depositor did not necessarily import that he was acting as trustee for others and require an investigation as to his authority — the bonds might have been torn or mutilated by long use, and, having no knowledge of his character, the bank was not required to look upon him with any suspicion. *Manhattan Sav. Inst.* v. *Nat. Exch. Bank,* 53 App. Div. 635, affirmed.

(Argued January 16, 1902; decided February 25, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 8, 1900, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

This action is in replevin, for the recovery of ten bonds claimed to be the property of the plaintiff and to be wrongfully detained by the defendant. The answer set up, as an affirmative defense, that the bonds were negotiable securities and had been pledged to the defendant as collateral security for a loan of money. The bonds were part of a series issued by the city of Yonkers, in this state, under authority of chapter 297 of the Laws of 1875. The act provided, among other things, with respect to the purpose and the manner of the issue, the lien of the bonds upon taxable property and that "said bonds shall be signed by the mayor and city clerk, and the corporation seal of the city shall be attached thereto, and they shall be registered in the city clerk's office in a book to be kept for that purpose." These bonds were payable in 1899 and were delivered to the plaintiff in 1876. A record of their numbers, amounts, and of their dates of issue and maturity, was contained in a book, kept for that purpose by the city clerk of Yonkers, and a marginal note, further, showed that they were owned by the plaintiff. All of these bonds were alike in tenor and recited that the " City of Yonkers * * * is justly indebted to ———, or ——— in the sum of $1,000, * * * which the said city of Yonkers promises to pay at the office of the city treasurer of the city of Yonkers on the first day of April, 1899, with interest," etc. They, further, referred to the act, authorizing their issue,

and stated that they were "registered in the city clerk's office." They were coupon bonds ; each bond having attached to it coupons, payable to the bearer, in the amount of the semi-annual interest, as it accrued. In October, 1878, these bonds, with a very large amount of other securities and of cash, were stolen from the vaults of the plaintiff, as the result of a burglary. Notice was widely given of the loss and descriptions of the stolen securities were published, at the time ; but these bonds were never traced, nor heard of, until they were discovered in the possession of the defendant in April, 1896. It had then received them from George H. Pell, one of its customers, who had pledged them as collateral security for the loan to him, upon his note, of $7,500. At the time of the making of the loan, only $9,000, in amount, of the bonds had been pledged. With respect to the tenth bond, no question was made by the defendant as to the right of the plaintiff to recover it; inasmuch as it was received after knowledge that the bonds had been stolen. It appeared from the evidence that Pell had been a convict and was of bad reputation ; but the fact was unknown to the defendant, which had had several transactions with him as a depositor and in legitimate ways. Knowledge that the bonds were stolen came through correspondence with the city clerk of Yonkers, after the making of the loan.

At the close of the case, each party moved for the direction of a verdict and a verdict was directed by the trial judge in favor of the defendant. A motion by the plaintiff for the submission of the case to the jury, on various grounds stated, was denied and exceptions were taken to the denial and to the previous ruling. Upon a previous trial, a verdict had been directed for the plaintiff; but the defendant's exceptions were ordered to be heard, in the first instance, at the Appellate Division, where they were sustained and a new trial was ordered, which is the one upon which this record comes before this court. The judgment entered for the defendant, upon the verdict as directed by the trial court, has been affirmed by the Appellate Division, in the first department, and the plaintiff now appeals to this court.

*Edward S. Rapallo* for appellant. The defendant obtained no title to the bonds, nor right to hold them, as against the plaintiff, the true owner, as they appeared upon their face to be, and were in reality, non-negotiable instruments. (L. 1897, ch. 612; *McClelland* v. *Norfolk*, 110 N. Y. 469; *Evartson* v. *Nat. Bank*, 66 N. Y. 14; *Douglas* v. *Wilkeson*, 6 Wend. 637; *Warren* v. *Scott*, 32 Iowa, 22; *Brown* v. *Gilman*, 13 Mass. 157; *Cruchley* v. *Clarence*, 2 M. & S. 90; *Cruchley* v. *Mann*, 5 Taunt. 529; *Greenhow* v. *Boyle*, 7 Blackf. 56; *Atwood* v. *Griffin*, R. & M. 425; *Paye* v. *Morrell*, 3 Keyes, 117.) The defendant failed to show a right to the bonds as *bona fide* holder without notice of defect of title, having made the loan to Pell, trustee. (*Suarez* v. *de Montigny*, 1 App. Div. 494; *Kirsch* v. *Tozier*, 143 N. Y. 390; *Cheever* v. *Pittsburgh*, 150 N. Y. 59.) The trial court erred in refusing to submit to the jury the question of plaintiff's right to the bonds, and especially the issue as to the good faith of defendant in accepting them. (*Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Murray* v. *Lardner*, 2 Wall. 110; *Chester* v. *P. R. Co.*, 150 N. Y. 59; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *D. Ins. Co.* v. *Hachfield*, 73 N. Y. 226; *Gerard* v. *McCormick*, 130 N. Y. 261; *F. Nat. Bank* v. *Nat. B. Bank*, 156 N. Y. 460; *Budd* v. *Munroe*, 18 Hun, 316.) All the questions of law presented upon this appeal are reviewable by this court. *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *Amherst College* v. *Ritch*, 151 N. Y. 282; *People* v. *Barker*, 152 N. Y. 417; *Marden* v. *Dorthy*, 160 N. Y. 39; *Reed* v. *McCord*, 160 N. Y. 330; *Commercial Bank* v. *Sherwood*, 162 N. Y. 310; *Nat. H. Co.* v. *Bement*, 163 N. Y. 505.)

*Percy S. Dudley* and *George C. De Lacy* for respondent. The bonds were negotiable instruments and could be retained by a holder in good faith and for value, who acquired them before maturity, against the true owner of the bonds. (*Nesbit* v. *R. Dist.*, 144 U. S. 619; *Andes* v. *Ely*, 158 U. S. 312; *P. T. Co.* v. *Mercer Co.*, 170 U. S. 593; *Dixon Co.* v. *Field*, 111 U. S. 83; *McClure* v. *Oxford*, 94 U. S. 429; *Crow* v. *Oxford*, 119

U. S. 215; *R. C. Township* v. *Strong*, 96 U. S. 271; *D'Esterre* v. *City*, 90 Fed. Rep. 586; 104 Fed. Rep. 605; *Bank of Rome* v. *Vil. of Rome*, 19 N. Y. 20; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496.) Plaintiff's motion for the direction of a verdict on the grounds that the bonds in question were not negotiable, and, therefore, the defendant could not acquire title through Pell, as the bonds had been stolen from the plaintiff, and also that there was no evidence of the authority of Pell, as trustee, to borrow money and pledge the bonds, was properly denied. (*Hyatt* v. *Clark*, 118 N. Y. 563; *Baker* v. *N. Y. Nat. Exchge. Bank*, 100 N. Y. 31; *Suarez* v. *de Montigny*, 1 App. Div. 494; *Kirsch* v. *Tozier*, 143 N. Y. 390; *Spencer* v. *Weber*, 163 N. Y. 493; *F., etc., Bank* v. *Noxon*, 45 N. Y. 762.) The trial justice properly directed a verdict in favor of the defendant for the nine bonds, denying the plaintiff's request to go to the jury. (*Cheever* v. *P., etc., R. R. Co.*, 150 N. Y. 65; *S. Nat. Bank* v. *Weston*, 161 N. Y. 526; *Goodman* v. *Harvey*, 4 Ad. & El. 870; *Murray* v. *Lardner*, 2 Wall. 110; *Seybel* v. *N. C. Bank*, 54 N. Y. 288; *Welch* v. *Sage*, 47 N. Y. 143; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *C. Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Bank* v. *Weston*, 159 N. Y. 201; *S. N. Bank* v. *Weston*, 161 N. Y. 520.)

Gray, J. Very elaborate and careful opinions were delivered at the Appellate Division, upon the affirmance of the judgment below and upon the previous hearing of the defendant's exceptions, after the direction of a verdict for the plaintiff, when the new trial was ordered. (42 App. Div. 147.) Any extended discussion becomes, therefore, unnecessary. Whether the plaintiff, or the defendant, must sustain a loss is, very plainly, a question which turns upon the character of these bonds and upon the circumstances under which the defendant acquired their possession. The plaintiff lost them, as the result of a theft, and the defendant loaned its moneys upon the security of their pledge, in the most absolute good faith, as it claims. If the bonds were of that negotiable char-

1902.] Manhattan Sav. Inst. *v.* N. Y. Nat. Exch. Bank. 63

N. Y. Rep.]        Opinion of the Court, per Gray, J.

acter, that title passed with the possession and the defendant parted with its moneys, upon their pledge, without any circumstances which, in the eye of the law, imposed some duty of inquiry, then it obtained, and is entitled to assert, a special property in them, to the extent that they stand as security for the moneys loaned. It is insisted by the appellant that the bonds appear upon their face to be, and were, in reality, nonnegotiable instruments; because, (1), no payee was named and because, (2), they were registered in the books of the city of Yonkers, which issued them, and. they so stated. These bonds were under the seal of the municipality and what peculiar features may have distinguished them are those stated, and commented upon, by the appellant.

That bonds, whether issued by a municipal corporation under its seal, or issued by any other corporation, may be negotiable instruments, must be regarded as not open to discussion. (*Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 ib. 496; *Chase Nat. Bank* v. *Faurot*, 149 ib. 532.) That the omission to insert the name of a payee is not a feature, or a defect, which affects their negotiability, seems to be, also, well settled by authority. These bonds were issued, and delivered for use, in their present form, intentionally, and, therefore, their incompleteness, in no wise, constitutes any defense to their payment, nor could prevent the character of negotiability from attaching. Their inception as commercial instruments was valid and the effect of the omission to name a payee was to invest any *bona fide* holder with the authority to fill the blank left for that purpose by the obligor. They were payable to the bearer, until restricted in their currency as negotiable instruments by the insertion of the name of some particular payee. (*Ledwich* v. *McKim*, 53 N. Y. 307; *Dinsmore* v. *Duncan*, 57 ib. 573; *White* v. *Vermont & M. R. R. Co.*, 21 How. [U. S.] 575; *Angle* v. *N. W. M. Life Ins. Co.*, 92 U. S. 330; *Cruchley* v. *Clarance*, 2 M. & S. 90; Daniel on Negot. Instruments, § 145.) Indeed, this rule of law is not disputed by the appellant; but it is contended, in its behalf, that the authori-

ties, upon which the general rule rests, go no further than to
hold that any *bona fide* holder " in the regular chain of *bona
fide* holders" has the implied authority to fill the blanks left
in the instrument by the makers. The authority, it is said, to
fill the blanks runs, primarily, to the person to whom the
instrument is delivered and he, in turn, when transferring in
that condition, is held likewise to authorize his transferee and
the authority thus passes to the last *bona fide* holder; but,
if the instrument is stolen from its owner in that condition,
no subsequent *bona fide* holder can derive authority from the
thief to fill in the blanks. The reasoning is ingenious; but
I think it disregards the fundamental principle of the nego-
tiability of instruments. The original intention, by issuing
the bonds in blank, must have been, obviously, to make
them negotiable and payable to any holder in good faith,
as the bearer. The character of negotiability having once
been, voluntarily, conferred upon the instrument by the maker,
it cannot be destroyed, except by the act of a holder in
limiting its payment, by proper insertion, to himself, or
to some other person. It was delivered for use by any
one, into whose hands it might come, and the right of
the holder cannot be disputed, except upon grounds which
relate to the manner of his acquiring its possession and not to
the form of the obligation. The principle of liability, how-
ever variously stated, is the same. By sending the instru-
ment into the world, in its imperfect form, the maker is
estopped from urging, as against a *bona fide* holder, who has
received it of any one having it in possession, a defect of
title; and the holder, though without title, has capacity to give
a title, because he is the apparent owner of the instrument.
As every person possessing himself of the instrument may fill
in its blank space, and make it payable to himself, through
the voluntary act of the maker, the holder is presumed to be
the owner. In such a case, the title and the possession are
inseparable and the legal presumption attaches that the party
in possession holds the instrument for value, until the con-
trary be made to appear. (*Cruchley* v. *Clarance, supra;*

*Van Duzer* v. *Howe*, 21 N. Y. 531; *Ledwich* v. *McKim*, *supra*; *Colson* v. *Arnot*, 57 N. Y. 253; *Goodman* v. *Simonds*, 20 How. [U. S.] 365.) The principle of negotiability is in the instrument having a circulating credit and in its being transferable by indorsement and delivery, or by delivery merely. To import into the general rule a term, or an element of duty, which requires of a purchaser, taking in good faith and for value, that he investigate the *bona fides*, or the title, of previous holders in the chain of title, would be inconsistent with the feature, or quality, of negotiability. There is no middle term between negotiability and non-negotiability and if, before acquiring a good title to negotiable instruments, it would be necessary for a person to make inquiry of every one "in the regular chain of *bona fide* holders," as the appellant would have it, in order to be assured of his having an undisturbed current of authority to fill in the name of a payee, where would be the negotiability? The theory of negotiable instruments, and of their currency from hand to hand, like bank notes, rests upon the proposition that they appear to belong to the person having them in possession and to no one else. In the present case, the bonds were payable to any one, who took them in good faith; because his authority to fill in the name of a payee was derived, not from Pell who presented them, but from the city of Yonkers, which, as maker, sent them forth with a general warrant to any *bona fide* holder to make himself their payee.

But it is, further, contended, in behalf of the appellant, that the bonds were intended to be issued as registered; that they were so, in fact, and that it was so stated upon their face. I think this is a misapprehension of the legislative intent. The language of the act is not that the bonds should be issued by the city to registered payees; nor, when read with ordinary apprehension, that they should be issued as registered bonds, in contradistinction to coupon bonds, and be non-negotiable in character. The requirement of registration was rather in the nature of a measure for the protection of the city and for a record, showing the amount of each issue and

its due date. The issue was not to exceed $40,000, in any one year and the date of maturity was at such times, as the common council should determine. The act then provides that " such bonds shall be signed by the mayor and city clerk, and the corporate seal of the city shall be attached thereto, and they shall be registered in the city clerk's office, in a book to be kept for that purpose." The provision for registration appears to be designed to exhibit the regularity and the authority of the issue, and not to prescribe the form of the obligation. A legislative intent to prevent an issue of negotiable bonds, at the pleasure of the municipality, is not, at all, clear. The statement upon the face of the bond, that it was registered in the city clerk's office, simply, showed compliance with the act, authorizing its issue. Had inquiry been made of the city clerk and had the inquirer ascertained that the bonds were, originally, delivered to this plaintiff, he would have found the issue to be regular; but he would have been no further put upon his inquiry. As nothing in the act precluded the city from making its bonds negotiable in form and from leaving the name of the payee blank, he would have the right to assume that the plaintiff, though having the implied authority to make the bonds payable to it, and thus to limit their negotiability, had, for reasons satisfactory to itself, elected not to do so. It was in the plaintiff's power to prevent a loss by theft, or by dishonest use, by making the bonds payable to itself ; but it chose not to limit their negotiability and this consideration is not without its bearing upon the question of where this loss should fall.

The only other question, which I deem at all useful to discuss, is whether there was anything in the facts and circumstances, as disclosed upon the trial, which required the learned trial judge to submit to the jury the question of the right of the plaintiff to the bonds, or the question of the defendant's good faith. This ground is well covered, in the opinion delivered below at the Appellate Division. The appellant enumerates the facts, that the payee was blank; that the bonds declared that they were registered ; that Pell borrowed upon

1902.] Manhattan Sav. Inst. *v.* N. Y. Nat. Exch. Bank. 67

N. Y. Rep.]  Opinion of the Court, per Gray, J.

them as trustee; that the corners were burned and, lastly, that Pell was, in fact, an ex-convict and a notorious person. Nothing in the evidence tended to show that the defendant had any knowledge of Pell's previous conviction, or that he was a notorious person. Its dealings with him had extended over some time and had been commenced, and were continued, in ordinary and legitimate ways. He was well connected and introduced, and no fact is shown, which should have induced the defendant to look upon him with any suspicion. His account was opened in the name of "George H. Pell, trustee," in June, 1895, and down to April, 1896, when this transaction occurred, all of his monetary transactions were through that account. Coupling the word "trustee" with his name as a depositor was not an unusual, or peculiar, circumstance; nor, necessarily, imported that he was acting as trustee for others. It simply distinguished, or described, the account, which he opened, in a particular way, satisfactory to himself, and did not call for any investigation on the part of the bank into his authority as trustee. At no time, so far as the record shows, was there any transaction through that account, or otherwise, with the bank, in the interest of persons, for whom he was acting as their trustee. The bank had every right to assume, as to the bonds offered to it as collateral security by a customer, who had the account with it, that he was acting in good faith and within his lawful rights, and the fact that he was borrowing upon city bonds, in no wise, affected the bank's right to indulge in the assumption. (*Am. Ex. Nat. Bank* v. *N. Y. Belting & P. Co.*, 148 N. Y. 698.)

No other of the facts pointed out by the appellant need be further referred to; except, perhaps, the fact that the corners of these bonds appeared to be burned. They had been outstanding for some twenty years and such a fact was no more notice of any defect, or irregularity, in the seller's title to them, than if they had been torn, or mutilated by long use. A purchaser was not bound, in order to escape the imputation of bad faith, to make an investigation for such reasons. The rights of the purchaser of a negotiable instrument are not to

be affected by constructive notice ; unless it appears that the circumstances suggested an inquiry at the time of the purchase, which, if fairly pursued, would have resulted in the discovery of the defect in the title. There must appear to be, in the nature of the case, such a connection between the facts appearing, and the further facts to be discovered, that the former may be said to furnish a reasonable and natural clue to the latter. (*Birdsall* .v. *Russell*, 29 N. Y. 220 ; *Dutchess Co. Mut. Ins. Co.* v. *Hachfield*, 73 ib. 226.)

There was no natural, nor logical, connection between the facts pointed out by the appellant and the fact of a defective title in Pell and I find no evidence in the case that devolved any duty of inquiry upon the defendant, or cast suspicion upon its part in the transaction. The direction of a verdict, therefore, constituted no error, in my opinion.

After a careful consideration of this case, in the light of the very able argument which was made by the appellant's counsel, I am unable to conclude that any error was committed by the trial court which would warrant a new trial, and I, therefore, advise the affirmance of the judgment appealed from, with costs.

Parker, Ch. J., O'Brien, Bartlett, Haight, Martin and Vann, JJ., concur.

Judgment affirmed.