## FIDELITY & DEPOSIT CO. OF MARYLAND v. SPOKANE INTERSTATE FAIR ASS'N.

(Circuit Court of Appeals, Ninth Circuit. October 12, 1925. Rehearing Denied November 16, 1925.)

No. 4639.

1. **Insurance ⊂⇒425—Loss effected by manipulating lock of safe during policy period, after force or violence employed before policy period to remove plug from hole in safe door, held not within burglary policy.**

Loss effected by opening door of safe by manipulating lock alone during policy period, after employment of force or violence before policy period to remove plug from hole in safe door, *held* not within policy of indemnity against loss occurring within policy period by burglary of safe by actual force and violence.

2. **Insurance ⊂⇒425—Requirement of safe burglary policy that force and violence be employed held not inserted for evidential purposes only.**

Requirement of safe burglary policy, that force and violence be employed, *held* not inserted for evidential purposes only, especially in view of requirement that insured keep private watchman on duty within premises while not open for business.

3. **Insurance ⊂⇒146(3)—Policy construed like any other contract, though ambiguous language must be construed most strongly against insurer.**

While ambiguous language in policy, written and prepared by insurer, must be construed most strongly against it, policy must be construed like any other contract, and, if language is plain, there is little room for construction.

In Error to the District Court of the United States for the Northern Division of

the Eastern District of Washington; J. Stanley Webster, Judge.

Action by the Spokane Interstate Fair Association against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

Jas. A. Williams and E. A. Cornelius, both of Spokane, Wash., for plaintiff in error.

Randall & Danskin and Graves, Kizer & Graves, all of Spokane, Wash., for defendant in error.

Before GILBERT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. For several years last past the Spokane Interstate Fair Association has conducted a fair and exposition in the early days of September of each year at its fair grounds in the city of Spokane. Except during the fair and the brief period of preparation and dismantling, the fair grounds and buildings are unused and unoccupied. A safe is installed in a vault in the office of the association, in which the money taken in during the fair is kept until deposited in bank. About two years prior to the events that gave rise to the present controversy, the officers of the association lost the combination to this safe, and a locksmith was employed to open it. The locksmith drilled a small hole through the dial rim and safe door, through which he was able to learn the numbers and work the combination by means of a wire. This done, he drove a steel pin or plug into the hole and replaced the old dial plate with a new one, leaving no outward trace of the hole or plug. On August 31, 1924, just before the opening of the fair for that year, the Fidelity & Deposit Company of Maryland entered into a contract of insurance with the fair association, wherein the insurer agreed:

"To indemnify the assured for all loss by burglary occasioned by the abstraction of any such property from the interior of any safe or vault described in the declarations and located in the assured's premises, by any person or persons making felonious entry into such safe or vault by actual force and violence, of which force and violence there shall be visible marks made upon such safe or vault by tools, explosives, chemicals or electricity.

"To indemnify the assured for all damage (except by fire) to such safe or vault and to the said property contained therein, and to the premises including furniture and fixtures therein, caused by such person or persons making or attempting to make such entry into such safe or vault as aforesaid."

The policy further provides:

"This agreement shall apply only to loss or damage as aforesaid, occurring within the policy period defined in item 4 of the declarations or within any extension thereof under renewal certificate issued by the company."

Item 4 of the declarations fixed the policy period as from August 31, 1924, to September 10, 1924, at 12 o'clock noon. It was further stipulated that the insurer should not be liable for a loss effected by opening the door of any vault, safe, or chest by the use of a key or by the manipulation of any lock. On the night of September 4, 1924, a sum of money to the amount of approximately $15,000 belonging to the fair association was deposited in the safe, after which the safe and vault were locked for the night. On opening the vault on the following morning, the safe door was found open and the money was gone. The safe and surrounding premises were examined repeatedly for several days thereafter by officers of the fair association, city police officers, and private detectives, but nothing was found to indicate that the safe had been opened otherwise than by manipulation of the combination or lock. About 20 days later, however, the officers of the fair association employed a locksmith or expert to make a more thorough examination of the safe. This was done, and, upon removing the dial plate from the door of the safe, it was discovered that the steel pin or plug driven into the hole drilled in the door some two years before had been drilled out or otherwise removed. Steel shavings in and about the combination and safe indicated that this had been done. The present action was thereupon instituted on the policy to recover for the loss thus sustained.

It was at no time claimed that the safe was opened or entered by actual force and violence of which there were visible marks on the safe, by tools or otherwise, during the policy period. Indeed, it was frankly admitted on the argument before this court that whatever of force and violence was employed was so employed before the contract of insurance was entered into. The case was tried and submitted to the jury upon the theory that, some time before the fair and before the contract of insurance was entered into, a thief conceived the idea of burglarizing the safe during the fair week when it contained a large sum of money;

that, by way of preparation and to enable him to accomplish this successfully, he drilled out the pin or plug theretofore inserted in the safe door by the locksmith; that by this means he ascertained the combination of the safe and replaced the dial on the door; that he was thus able to open the safe on the night in question by manipulation of the lock or combination; and that he used no other force or violence of any kind in so doing.

The court charged the jury in effect that, if actual force and violence were used, it was immaterial whether they were so used during the policy period or not, and refused a request to instruct to the effect that there could be no recovery unless force and violence were employed after the execution of the policy and during the policy period. The exception to the charge as given, and the exception to the refusal of the court to charge as requested present the only assignments of error we deem it necessary to discuss or consider.

[1] The policy in suit was not a general contract of indemnity. It insured only against a particular loss, occurring in a particular way and within a particular period; that is, against a loss by burglary occasioned by the abstraction of property from the interior of the safe by a person making a felonious entry thereof by actual force and violence between August 31, 1924, and September 10, 1924, at 12 o'clock noon. It was expressly stipulated that the loss as aforesaid must occur within the policy period and that the insurer was not liable for a loss effected by opening the door of the safe by the use of a key or the manipulation of any lock. The entry itself, in this case, was made within the policy period, but whatever of force or violence was employed, was so employed before the policy period, and the safe was opened by the manipulation of the lock alone. It seems manifest to us that this was not a loss within the terms of the policy. The policy insured against damage to property as well as against loss of the contents of the safe, and it will scarcely be claimed that there could be a recovery for the former unless the damage occurred during the policy period. Of course, the fact that there could be no recovery for damage to the safe is not conclusive of the right to recover for loss of the contents, but both damage and loss must have occurred within the policy period, and the one provision throws some light upon the other.

[2, 3] It is said that the only purpose of the requirement that force and violence should be employed was evidential. This may have been one of the purposes, but in our opinion it was not the only or controlling one. If a person knowing the combination of a safe loots it, he will in all probability leave some trace of force and violence behind, if he has the time and the opportunity. On the other hand, it is much easier to enter a safe without detection by the mere use of a key or the manipulation of a lock, than by the use of actual force and violence, and that was especially true in this instance, because the insured was required to keep a private watchman on duty within the premises at all times when the same were not open for business, and it is conceded that it would have been impossible to make an entry into the safe by force and violence with a watchman only a few feet away, and with police officers on every side in the discharge of their duties. How can it be said then that the requirement that force and violence should be employed was for evidential purposes only? Again, it is said that the policy was written and prepared by the insurer, and that ambiguous language found therein must be construed most strongly against it. This is a familiar rule, but after all a contract of insurance is only a contract to be construed like any other contract, and, if its language is plain, there is little room for construction. An examination and comparison of all the provisions of this contract convince us that the insurer contracted against loss by burglary, to be committed by the use of force and violence in the future and within the policy period, not against a loss by burglary without force and violence within the policy period, but accomplished through the exertion of some unknown force and violence at some unknown time in the past. If we are correct in this conclusion, the court erred in its charge to the jury and in the refusal to charge as requested.

For these errors, the judgment is reversed, and the cause is remanded for a new trial.