**NATIONAL SURETY CO. v. SHERIDAN COUNTY, MONT., et al.**

Circuit Court of Appeals, Ninth Circuit.
June 24, 1929.

No. 5731.

474

Hurd, Hall & McCabe, of Great Falls, Mont., and Stewart & Brown, of Helena, Mont. (John G. Brown, of Helena, Mont., of counsel), for appellant.

C. N. Davidson, of Helena, Mont., Paul Babcock, of Plentywood, Mont., and Louis P. Donovan, of Shelby, Mont., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. █ This is an appeal from a judgment for $116,579.25, entered against appellant on October 25, 1928. The appellees, plaintiffs below, are a Montana county and its treasurer. The claim in suit was for a loss of county moneys and securities of which the treasurer alleged he was robbed at his office about 5:45 o'clock in the afternoon of November 30, 1926, and the loss of which appellees claim was covered by two robbery and burglary policies of insurance issued by appellant to the treasurer on November 6, 1926. That the policies were valid and in force upon the date of the alleged robbery admits of no doubt, and it is conceded that under the verdict of the jury the question whether a robbery was committed, and the further question of the amount stolen, are not within the scope of our review. Nor is it disputed that such money and securities as were lost belonged, absolutely or qualifiedly, to the county and were in the treasurer's official custody.

██ We are of the opinion that the county was a proper, though not a necessary, party plaintiff. By its contract appellant did not directly insure the county, but it did insure "Eng Torstenson, treasurer of Sheridan county, Montana," and expressly agreed "to pay the assured for loss sustained by the assured or by the owner." The county paid the premium on the policies, was the owner of the property stolen, and was therefore deeply interested in the subject-matter of the action. By the Montana statutes (Rev. Codes 1921, § 7472), it is provided that where a contract is made expressly for the benefit of a third person such person may enforce it. Section 9067 provides that "every action must be prosecuted in the name of the real party in interest, except that * * * a trustee of an express trust * * * may sue" without

joining with him the beneficiary. Under this provision the treasurer might have prosecuted the action alone, but the statute in that respect is generally held to be permissive, and not mandatory or exclusive. Pom. Code Rem. (4th Ed.) §§ 76, 111–115; 20 Cal. Jur. p. 497; note 23 to section 378, Kerr's Cal. Code Civ. Proc.; Stackpole v. Pac. Gas & Elec. Co., 181 Cal. 700, 186 P. 354. We do not think that County of Wheatland v. Van, 64 Mont. 113, 207 P. 1003, is necessarily opposed to this view. That was a suit on a bail bond, and while the reasoning may support the contention that here the treasurer was an indispensable party plaintiff, it would not follow that with his consent the county could not join with him in asserting a claim of common interest. A different question might have been presented upon an objection by him to an application of the county to be joined or to intervene. But, in any view, the appellant was not prejudiced, and a judgment is not to be reversed for a technical error which does not affect substantial rights. 28 USCA § 391; Frost v. J. B. Long & Co., 66 Mont. 385, 213 P. 1107, 1109; Daly v. Ruddell, 137 Cal. 671, 70 P. 784; Webster v. K. C. & S. Ry. Co., 116 Mo. 114, 22 S. W. 474.

Nor are we able to perceive the relevancy of the elaborate argument in support of the proposition that the county treasurer was, in respect of the county, an insurer of the public funds entrusted to him and that however they might be lost he and his official bond would be responsible therefor. Apparently such is not the prevailing doctrine in Montana. City of Livingston v. Woods, 20 Mont. 91, 49 P. 437; Wells-Dickey Co. v. Benjamin, 74 Mont. 170, 239 P. 771. But if it were the rule the county would none the less be the sole beneficial owner of the funds in the custody of the treasurer, and its remedy against the treasurer and his official bond could under no reasonable theory operate to relieve the appellant of its express undertaking to "pay the assured for loss sustained by the assured or by the owner by robbery." Whether the county had one remedy, or more than one, when the robbers took the money and securities belonging to it, it "sustained" a "loss" to the amount of the value thereof, and under its obligation appellant was bound to make good such loss. And in kind, though possibly not in degree, the county's interest in the event of this suit is the same, whether the treasurer's liability to it is absolute or only conditional.

Citing our decision in Fidelity & Deposit Co. v. Fair Ass'n, 8 F.(2d) 224, 44 A. L. R. 468, appellant urges that it is without liability, because the money and securities were taken without forcible entry into the vault or safe by tools or explosives, "while such safe or vault was duly closed and locked." But the charge here is of robbery, and not burglary, whereas in the Fair Association Case the record presented no question of robbery. The policies in suit cover loss by either burglary or robbery, and the language above quoted is from the provision having to do only with liability in case of burglary. Appellees purchased insurance against burglary and robbery, and the policies specify both, with distinctive conditions appropriate to each, and now appellant asks us to hold in effect that it is liable for loss only by burglary. Taken as a whole, we are inclined to think that the language is too plain to be subject to construction, but, if uncertain, under well-settled principles, the uncertainty must be resolved in favor of the insured.

The policies contained a provision to the effect that appellant was not to be liable in case of robbery, if the treasurer or any servant regularly employed by him committed the offense, or was "an accessory in effecting or attempting to effect the loss." And of course there was no robbery, and there could be no liability for loss by robbery, if the property was taken with the collusive consent of the treasurer. While such a defense was not affirmatively pleaded in its answer, it is to be inferred appellant urged it under the general issue, and it was submitted to the jury with appropriate instructions. Touching it, therefore, the verdict is conclusive.

But appellant now goes further, and contends that it was the duty of the treasurer not to hold the public moneys in his vaults, but to place the same on deposit in banks designated by the county commissioners as authorized depositories, that the amount in his hands at the time of the robbery was grossly in excess of his current needs for cash, and that therefore he cannot recover on account of the loss of such excess. The statute of the state provides that the treasurer shall deposit the public moneys in banks, and only in banks, that have furnished him with security, either surety bonds or collateral, approved by the board of county commissioners, and as we interpret the law it does not authorize deposits in excess of such approved securities. Whether the county commissioners have the

authority to authorize a deposit in excess of such securities is a question we need not consider, for there is no evidence that such authorization was ever attempted. While the evidence upon the point may be said to be somewhat conflicting, it is of such character as to leave little room for doubt that at the time of the robbery the treasurer was carrying deposits in the several banks furnishing approved securities up to substantially the amount thereof, and it is further shown that there had been bank failures in which, apparently, the county had suffered considerable losses.

We do not more fully go into an analysis of the evidence bearing upon the issue of fact, for the reason that we have no doubt that as a matter of law such defenses were not available to appellant. It might have declined to insure. against loss for more than $10,000, or more than $1,000; but it did not choose to do so. In one policy it stipulated for a maximum loss up to $80,-000, and in the other up to $75,000, and presumably collected from the county the premiums computed upon such maximum liabilities. Plainly it did not contract upon the assumption that the treasurer would always deposit in depositary banks public moneys immediately upon the receipt thereof, for on that assumption it is difficult to see why the treasurer or the county would have been in need, or would have desired any insurance at all against burglary, or more than a comparatively nominal amount against robbery. Torstenson was not only treasurer, but ex officio tax collector, and in the natural course his receipts would be very much greater at certain periods of the year than others, and in all probability it was for that reason that, while one of the policies ran for a year from the time it was issued, the other covered a period of only three months; the three months being presumably the period during which there would be the heaviest receipts from the collection of taxes. If it be assumed, contrary to the weight of the evidence, that the conduct of the treasurer was imprudent or negligent, it remains true that the contracts of insurance did not exclude losses incurred as a consequence of imprudence or negligence. The only exclusions were of losses willfully suffered and those incident to a robbery in which the insured or his employee was implicated either as principal or accessory.

Implicit in the verdict is the finding that neither the treasurer nor any one of his employees was in any wise a party to or was implicated in the robbery, or in any plan or scheme for the wrongful conversion of the public funds. Hence, even upon appellant's theory of an excess on hand, and that on account thereof the treasurer was derelict in his obligation to the county, and that such nonfeasance of duty constituted a criminal offense, appellant would not for that reason be relieved from liability. The most that can be said is that upon such assumption his negligence created a condition under which the robbery could be accomplished, but, inasmuch as under the verdict it conclusively appears he did not plan or intend or contemplate robbery, it cannot be successfully contended that the robbery or the loss effected thereby was "caused by his willful act." It would be as reasonable to say that the insurer of an automobile owner against loss by fire and theft, with no exclusion of such loss while the owner was violating any law, would be relieved from liability if at the time the car was burned or stolen it was parked at a place forbidden. Plainly the mere detention of the money in the vault or office did not bring about the loss. That was accomplished by the robbery, the intervening and only proximate cause, and that cause the insured did not "will." 22 R. C. L. p. 137; 11 Corp. Jur. 37; Wallace v. Chicago, etc., Ry. Co., 48 Mont. 427, 138 P. 499; Cleveland v. Bangor, 87 Me. 259, 32 A. 892, 47 Am. St. Rep. 326; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256.

■ Of the property stolen $45,651.70 was money; $54,587.85 principal, plus accrued interest, consisted of funding and refunding bonds of the appellee county; $511,82, a Liberty Bond with interest; and $1,114.-03, principal and interest, outstanding warrants of the appellee county. The currency and $22,192.20 of the bonds the county owned outright; the latter having, pursuant to law, been purchased by it from the holder thereof as a sinking fund investment. The other bonds and warrants were held as collateral security. furnished by banks to cover deposits therein. No point is made of the qualified ownership of the security thus held as collateral, but it is urged as to the warrants and all the bonds, except the Liberty Bond, that they could not be made the basis of recovery. The argument is that the policies insure only against loss, that all the securities except the Liberty Bond were nonnegotiable, and that therefore the county could fully protect itself by refusing payment, and could fully restore the formal status existing before the robbery by issuing duplicate instruments to take the place

of those stolen. None of the paper was due at the time it was taken; all the bonds were payable to bearer and were otherwise negotiable in form. Admittedly, therefore, if presented by innocent purchasers for value, the county would have no ground upon which to refuse payment, unless their status as negotiable instruments is affected by the fact that pursuant to law they were descriptively registered in the office of the county treasurer prior to their issuance and sale.

But this requirement is for the convenience and information of the county, and is not intended in any wise to condition the transfer of the bonds from hand to hand after they have once been issued, or to affect their commercial negotiability. It may be otherwise where bonds are issued to a designated obligee or his assigns, with the condition that they can be transferred only on the books of the obligor or of some other designated registration agency. 44 C. J. 1231; Daniel on Negotiable Instruments, § 1501; Manhattan Savings Institution v. Bank, 42 App. Div. 147, 59 N. Y. S. 51; Id., 170 N. Y. 58, 62 N. E. 1079, 88 Am. St. Rep. 640. See, also, D'Esterre v. Brooklyn (C. C.) 90 F. 586. Probably because the warrants amount to so little in the aggregate, they are only casually discussed in the briefs. The power of the county to protect itself in case they fall into the hands of innocent purchasers is doubtful, and in any view the assured and the county are by the robbery subjected to the hazard of litigation and the expense incident thereto, and we see no way by which they can be given adequate protection against a loss which is prima facie the value of the warrants. Upon paying the loss, the appellant would be subrogated to the rights of the owners of the stolen securities, and may, by giving security and otherwise pursuing the course provided by the state statute, procure duplicates thereof and collect thereon at their maturity.

In view of our conclusion upon this branch of the case, we do not think the jury disregarded the instructions of the court, and therefore we need not consider the contention that its supposed failure in that respect, though the instruction be erroneous, constitutes ground upon which a new trial should be granted, a rule recognized in some state jurisdictions, apparently including Montana, and rejected in others.

■ Having in mind evidence tending to show that from time to time the treasurer had returned to depositary banks securities which they had furnished, and which had been approved by the county commissioners, appellant asked for an instruction advising the jury in substance that if, without prior authorization from the commissioners, the treasurer had relinquished such securities, and the legal depositary facilities available to him had thus been reduced, and that for that reason he had on hand an excessive amount of money at the time of the robbery, no recovery could be had in this action for the loss of such excess. If we are right in what we have already said touching the legal bearing of the claimed excess, the refusal of the request was proper. We may add that upon what theory of right the treasurer could insist on withholding from a bank its securities, when it had no deposits and declared its purpose to receive none, is not apparent to us. The state statutes neither expressly nor by clear implication condition the authority of the treasurer, who is the legal custodian of such securities, to return them to the owners upon the consent of the county commissioners.

■ Another requested instruction was broadly and unqualifiedly to the effect that, if the treasurer violated the depositary law in any respect while the policies were in force, he committed a felony, and neither he nor the county could recover. Containing no suggestion of willfulness or of causal relation between such violation and the loss, in no just view of the law could it have been properly given.

Two or three other assignments are referred to generally in the brief, but admittedly they are ruled adversely by what we have already said.

Affirmed.